(No. 33249.—

ADDISON BROWN *et al.*, Appellants, *vs.* PAUL GERHARDT, JR., *et al.*, Appellees.

*Opinion filed January 21, 1955—Rehearing denied March 22, 1955.*

Moody, Foster & Barrett, of Chicago, (Edward W. Barrett, and Daniel A. Costigan, of counsel,) for appellants.

John J. Mortimer, Corporation Counsel, of Chicago, (L. Louis Karton, and Harry H. Pollack, of counsel,) for appellees.

Mr. Justice Maxwell delivered the opinion of the court:

The plaintiffs filed suit for an injunction to restrain the zoning authorities of the city of Chicago from enforcing the zoning ordinance against them and for a declaratory judgment that the use of their property was a valid nonconforming use. By leave of court certain individual property owners filed an intervening petition and counterclaim praying that plaintiffs be restrained from occupying their property as a multiple-family dwelling in a single-family residence district. The trial court ordered the property restored to single-family use and restrained its use as a multiple-family dwelling. The trial judge has certified that the validity of a municipal ordinance is involved and in his opinion the public interest required a direct appeal to this court and plaintiffs appealed.

The subject property is a three-story frame residence which has been converted to a five-unit apartment building and is presently being used as a multiple-family dwelling in a single-family zoned area. The plaintiffs contend that their use of the property is a valid nonconforming use under the ordinance. The defendants and intervenors con-

tended in the lower court that the use of the property was never a nonconforming use but if it ever had such status it has been lost by discontinuance under the provisions of the zoning ordinance.

The facts are substantially as follows: The building was constructed in 1891 by one Jeremiah Ryan as his country home, and was occupied by him and his family until 1905. The Ryan family returned to the residence in 1914 and, because of reduced circumstances, between 1914 and 1921, converted the internal arrangements to make six separate dwelling units in the house which were rented to various tenants. Jeremiah Ryan died in 1931 and possession of the property vested in the executor of his estate. The executor then rented the premises to a family named MacLoane who occupied the premises as a single family from 1931 to 1937. In 1937, Harry Ryan, son of the original owner, occupied the property and rented out certain portions until 1940 when the plaintiffs purchased it for $6500. Shortly thereafter plaintiffs began remodeling the building and finished it for occupancy as five separate living units late in 1942. They started renting the units immediately thereafter.

By the original Chicago zoning ordinance, which became effective April 5, 1923, the area in which the property in question is located was zoned for single-family occupancy. It provided, with certain restrictions, that a nonconforming use existing at the time of the passage of the ordinance could be continued.

While there is some dispute in the testimony on the point, it seems clear that the evidence establishes nonconforming use upon the effective date of the ordinance.

The defendants seriously contend that the nonconforming use was that of a boarding or rooming house and not as a multiple-unit dwelling. The building was changed into six distinct units with separate living rooms, bedrooms, kitchenettes and bathrooms. There was some evidence of

the renting of rooms and nonuse of kitchen facilities by roomers, but that appears to have been only incidental to the purpose for which the building was remodeled and used. After a careful examination of the record, we are of the opinion that the nonconforming use was primarily that of a multiple-unit dwelling.

The question then, presented for our determination, is whether the property has lost its nonconforming status. There are two periods of time when nonconformance may have been lost, the first, from the effective date of the ordinance to July 6, 1940, which was the time of acquisition by plaintiffs, and the second, from the acquisition through the effective date of the 1942 amendment to the ordinance.

The facts relative to occupancy for the first period indicated usage by Jeremiah Ryan from the time of the conversion to multiple units up to his death in 1931. The executor of Ryan's estate then rented the entire property to the MacLoane family from 1931 to 1937. The lease is not in evidence but it appears from the testimony of Mrs. MacLoane that she and her family did not sublet any part of it. There were practically no changes for occupancy by the MacLoane family other than the capping of some gas pipes for safety. In 1937 Harry Ryan moved back into the premises and paid rent to the executor of his father's estate. Apparently he sublet the various apartments from thence until 1940 to five tenants. He advised them of the sale or proposed sale, and the last family, other than his own, moved out the latter part of April, 1940. Plaintiffs purchased the property July 6, 1940, moved in immediately and commenced making improvements which were completed late in 1942.

Section 14(h) of the ordinance of 1923 provides as follows "A non-conforming use if changed to a conforming use shall not thereafter be changed back to non-conforming use." If there was a change in use, it must necessarily

have been during the occupancy of the MacLoanes. No change was effected during the occupancy of Jeremiah Ryan nor during the tenancy of Harry Ryan.

The question of whether there was a "change" within the meaning of the ordinance is very similar to the one before us in the case of *Douglas* v. *Village of Melrose Park*, 389 Ill. 98. In that case the ordinance permitted nonconforming use and provided that whenever nonconforming use "has been discontinued or changed to a higher classification or to a non-conforming use, such use shall not thereafter be changed to a use of lower classification." We there held that discontinuance of use was equivalent to abandonment and the facts did not justify a finding that the nonconforming use had been abandoned. The term "to change" is practically synonymous with "to discontinue" and "to abandon" when used in this connection. It must first be determined from the record whether the nonconforming use was changed or merely suspended.

No physical changes were made during the MacLoanes' occupancy indicating an intention to change use of the building as a multiple-housing unit. According to the undisputed testimony of Mrs. MacLoane, hot plates and kitchen equipment were stored in the cupboards and presumably ready for use at any time the units were again occupied separately. There was some disconnection of facilities but no substantial evidence of removal of fixtures to make a one-family unit of the property. This court takes judicial notice of the fact that in 1931 and several years thereafter this country was in a severe depression. Much property was vacant and was rented for whatever it would bring. The mere fact that only one family occupied a six-family dwelling is not conclusive of intention to abandon it for multiple-dwelling purposes.

The right to a nonconforming use is a property right. (*Western Theological Seminary* v. *City of Evanston*, 325 Ill. 511; *Douglas* v. *Village of Melrose Park*, 389 Ill. 98.)

If that right was lost during the period under consideration, it was while title was vested in the Ryan executor. There may be a serious question of the power of a person acting in that capacity to give up such a right. The record is silent as to the executor's powers under the will. We feel, however, that it is unnecessary to pass upon that question as the evidence fails to show any intention to abandon.

The defendants cite cases from foreign jurisdictions concerning the length of time that nonuse or vacancy may ripen into abandonment. Time in itself is not an essential element of change or abandonment. It is entitled to consideration, particularly in connection with other facts evidencing an intention to change or abandon. (*Douglas* v. *Village of Melrose Park*, 389 Ill. 98.) They also direct attention to certain exhibits indicating use as a single-family dwelling, including the allegations of a bill to foreclose a mortgage and an inventory and other documents filed by the Ryan executor. These have been carefully weighed but they do not overcome the fact that no physical change was ever made and no indication of an intention to do so.

As to the second period of time, that is, from plaintiff's acquisition of the property to the time of its occupancy by the several tenants late in 1942, all the evidence shows an intention to continue rather than to abandon the nonforming use. They moved into the property in July, 1940, and commenced remodeling and repairs immediately thereafter which were completed late in 1942. Their intention was evidenced by the fact that they spent up to $25,000 to improve the property. It is noteworthy that structural changes were not necessary but the improvements were confined mostly to replacing obsolete plumbing fixtures, plastering, fireplaces and landscaping. A new porch and rooms were added, and one family unit was eliminated. There is every evidence that the latest improvements were to exist-

ing units and that the net result was a definite improvement. We conclude that there was no loss of the conconforming use during the latter period.

There seems to have been some confusion as to the effect, if any, of the amendment to the zoning ordinance effective December 3, 1942. Section 19(b) thereof provided that if a nonconforming use be discontinued for two years it shall not be re-established. We agree with defendants that the amended ordinance is not applicable in the case at bar and it will not be here discussed.

In view of our holding hereinabove expressed, it is unnecessary for us to pass upon the constitutional questions raised by plaintiffs.

The decree of the superior court is reversed and the cause remanded with directions to enter a decree conforming to the views herein expressed.

*Reversed and remanded, with directions.*