People of the State of Illinois, ex rel. Richard Trebat and Mid America Federal Savings and Loan Association, a United States Corporation, Plaintiffs-Appellants, v. City of Park Ridge, a Municipal Corporation, et al., Defendants-Appellees.

Gen. No. 53,494.

First District, Second Division.

June 3, 1969.

 █ 

Westbrook, Jacobson and Brandvik, of Chicago (Lowell H. Jacobson and James A. Brandvik, of counsel), for appellant.

Shaheen, Lundberg and Callahan, of Chicago (Edgar C. Lundberg and Martin J. Lillig, of counsel), for appellees.

MR. PRESIDING JUSTICE LYONS delivered the opinion of the court.

This is an appeal from a judgment entered in favor of defendant in an action for (1) a writ of mandamus to compel the City of Park Ridge to issue a building restaurant remodeling permit and (2) for a declaratory judgment that the premises in question are improperly zoned "A" Residential.

On November 13, 1953, the Park Ridge City Council, by ordinance, involuntarily annexed a parcel, which included the property involved. At the time there existed a provision in the Park Ridge City Zoning Ordinance, chapter 252–2, which provided that all property annexed to the City automatically came into the City as "A" Residential. For many years prior to the annexation and until January 22, 1964, the subject property was operated as a restaurant pursuant to the issuance of a restaurant license permit by the City.

Plaintiffs became owners of the property in 1964. On August 7, 1964, plaintiffs applied for an illuminated restaurant sign permit and a prerequisite restaurant remodeling building permit from the City of Park Ridge. The sign application was premised on the City of Park Ridge illuminated sign ordinance found in chapter I of Article 19 of the Park Ridge Code.

On September 5, 1964, the Building Board of Review unanimously approved the issuance of a building permit, provided (1) that the wall sign continue unilluminated; (2) that no sign be erected on any pole located on City property; and (3) that plaintiffs be informed of the possibility of not being able to use the entire paved area in front of the restaurant for parking after the completion of a contemplated Touhy Avenue sewer project, in that there was a strong probability that the parkway area would be sodded and a public walk constructed by special assessment. The City Council, however, directed that the building remodeling permit not be issued nor any type of sign permit be issued on the basis that such permits are permitted only in zoning districts properly zoned for restaurants.

Thereafter, in 1964, plaintiffs filed the instant action. Count I consisted of a petition for a writ of mandamus directing the issuance of building remodeling and sign permits. Count II consisted of a complaint for a declaratory judgment praying that the "A" Residential zoning classification for the subject property, under the Park Ridge Zoning Ordinance, be declared unconstitutional.

In support of their complaint for a declaratory judgment, plaintiffs contend that property which is annexed involuntarily cannot be automatically zoned "A" Residential without notice and hearing, a requirement afforded property owners within a municipality prior to the adoption of any new zoning classification, and that the classification by defendant violated the Illinois Constitution, Article 2, Section 2, guaranteeing due process of law and Article 4, Section 22, prohibiting special legislation. We disagree with plaintiffs. The Supreme Court on direct appeal entered an order stating that in their opinion the appeal did not present a novel and substantial question sufficient to give the

court jurisdiction on appeal and on its own motion the court transferred the matter to this court.

In further support of their complaint for a declaratory judgment, plaintiffs contend that property which is annexed involuntarily cannot be automatically zoned "A" Residential unless the Illinois Zoning and Enabling Statutes are adhered to. Defendant contends that property which is subsequently annexed can be bound by an existing zoning ordinance and that the requirements of the State Enabling Statute need be followed only at the time the original ordinance was adopted. In rebuttal, plaintiffs contend that an existing zoning ordinance classification applicable to property which may be subsequently annexed is invalid as an exercise of extraterritorial zoning powers.

The applicable statutory provisions found in chapter 24, Ill Rev Stats (1963) are as follows:

Sec 11–13–1. [Objectives—Classification, regulation and location of uses—Nonconforming uses.] § 11–13–1. To the end that adequate light, pure air, and safety from fire and other dangers may be secured, that the taxable value of land and buildings throughout the municipality may be conserved, that congestion in the public streets may be lessened or avoided, that the hazards to persons and damage to property resulting from the accumulation or runoff of storm or floodwaters may be lessened or avoided, and that the public health, safety, comfort, morals, and welfare may otherwise be promoted, the corporate authorities in each municipality have the following powers:

(1) To regulate and limit the height and bulk of the buildings hereafter to be erected; (2) to establish, regulate and limit, subject to the provisions of Division 14 of this Article 11, the building or set-back lines on or along any street, trafficway,

drive, parkway or storm or floodwater runoff channel or basin; (3) to regulate and limit the intensity of the use of lot areas, and to regulate and determine the area of open spaces, within and surrounding such buildings; (4) to classify, regulate and restrict the location of trades and industries and the location of buildings designed for specified industrial, business, residential, and other uses; (5) to divide the entire municipality into districts of such number, shape, area, and of such different classes (according to use of land and buildings, height and bulk of buildings, intensity of the use of lot area, area of open spaces, or other classification) as may be deemed best suited to carry out the purposes of this Division 13; (6) to fix standards to which buildings or structures therein shall conform; (7) to prohibit uses, buildings, or structures incompatible with the character of such districts; and (8) to prevent additions to and alteration or remodeling of existing buildings or structures in such a way as to avoid the restrictions and limitations lawfully imposed under this Division 13.

The powers enumerated may be exercised within the corporate limits or within contiguous territory not more than one and one-half miles beyond the corporate limits and not included within any municipality. However, if any municipality adopts a plan pursuant to Division 12 of Article 11 which plan includes in its provisions a provision that the plan applies to such contiguous territory not more than one and one-half miles beyond the corporate limits and not included in any municipality, then no other municipality shall adopt a plan that shall apply to any territory included within the territory provided in the plan first so adopted by another municipality. No municipality shall exercise any power set forth in this Division 13 outside the corporate

limits thereof, if the county in which such municipality is situated has adopted "An Act in relation to county zoning," approved June 12, 1935, as amended. If a municipality adopts a zoning plan covering an area outside its corporate limits, the plan adopted shall be reasonable with respect to the area outside the corporate limits so that future development will not be hindered or impaired. If all or any part of the area outside the corporate limits of a municipality which has been zoned in accordance with the provisions of this Division 13 is annexed to another municipality or municipalities, the annexing unit shall thereafter exercise all zoning powers and regulations over the annexed area.

*In all ordinances passed under the authority of this Division 13, due allowance shall be made for existing conditions, the conservation of property values, the direction of building development to the best advantage of the entire municipality and the uses to which the property is devoted at the time of the enactment of such an ordinance. The powers conferred by this Division 13 shall not be exercised so as to deprive the owner of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted, but provisions may be made for the gradual elimination of uses, buildings and structures which are incompatible with the character of the districts in which they are made or located,* including, without being limited thereto, provisions (a) for the elimination of such uses of unimproved lands or lot areas when the existing rights of the persons in possession thereof are terminated or when the uses to which they are devoted are discontinued; (b) for the elimination of uses to which such buildings and structures are devoted, if they are adaptable for permitted uses; and (c) for the elimination of such buildings and structures

when they are destroyed or damaged in major part, or when they have reached the age fixed by the corporate authorities of the municipality as the normal useful life of such buildings or structures. (Emphasis supplied.)

Sec 11-13-2. [Zoning commission—Ordinance.] § 11-13-2. The corporate authorities in each municipality which desires to exercise the powers conferred by this Division 13 shall provide for a zoning commission with the duty to recommend the boundaries of districts and appropriate regulations to be enforced therein. The commission shall be appointed by the mayor or president, subject to confirmation by the corporate authorities. The commission shall prepare a tentative report and a proposed zoning ordinance for the entire municipality. After the preparation of such a tentative report and ordinance, the commission shall hold a hearing thereon and shall afford persons interested an opportunity to be heard. Notice of the hearing shall be published at least once, not more than 30 nor less than 15 days before the hearing, in one or more newspapers published in the municipality, or, if no newspaper is published therein, then in one or more newspapers with a general circulation within the municipality. In municipalities with less than 500 population in which no newspaper is published, publication may instead be made by posting a notice in 3 prominent places within the municipality. The notice shall state the time and place of the hearing and the place where copies of the proposed ordinance will be accessible for examination by interested persons. The hearing may be adjourned from time to time.

Within 30 days after the final adjournment of the hearing the commission shall make a final report and submit a proposed ordinance for the entire municipality to the corporate authorities. The corporate

authorities may enact the ordinance with or without change, or may refer it back to the commission for further consideration. The zoning commission shall cease to exist upon the adoption of a zoning ordinance for the entire municipality.

Sec 11–13–14. [Amendments of regulations and districts—Protests.] § 11–13–14. The regulations imposed and the districts created under the authority of this Division 13 may be amended from time to time by ordinance after the ordinance establishing them has gone into effect, but no such amendments shall be made without a hearing before some commission or committee designated by the corporate authorities. Notice shall be given of the time and place of the hearing, not more than 30 nor less than 15 days before the hearing, by publishing a notice thereof at least once in one or more newspapers published in the municipality, or, if no newspaper is published therein, then in one or more newspapers with a general circulation within the municipality. In municipalities with less than 500 population in which no newspaper is published, publication may be made instead by posting a notice in 3 prominent places within the municipality. In case of a written protest against any proposed amendment of the regulations or districts, signed and acknowledged by the owners of 20% of the frontage proposed to be altered, or by the owners of 20% of the frontage immediately adjoining or across an alley therefrom, or by the owners of 20% of the frontage directly opposite the frontage proposed to be altered, is filed with the clerk of the municipality, the amendment shall not be passed except by a favorable vote of two-thirds of all of the aldermen or trustees of the municipality.

Sec 11–15.1–5. [Existing agreements—Validation] § 11–15.1–5. Any annexation agreement executed prior to the effective date of this Amendatory Act of

411

1963 which was executed pursuant to a two-thirds vote of the corporate authorities and which contains provisions not inconsistent with Section 11–15.1–2 hereof is hereby declared valid and enforceable as to such provisions for the effective period of such agreement, or for 5 years from the date of execution thereof, whichever is shorter.

The applicable provisions in the Park Ridge Zoning Ordinance are as follows:

252–1. PROPERTY INCLUDED. The "A" residence districts shall include the entire area of the City of Park Ridge, Illinois, excepting only the portions of said City as hereinafter included in the "B," "C," "D," and "E" districts hereinafter bounded and limited.

252–2. SUBSEQUENTLY ANNEXED PROPERTY. All property hereafter annexed to the City of Park Ridge, Illinois, shall be classified as "A" residence property and so limited until subsequently changed by proper amendment hereto.

. . . . . .

258–1. The use of a premises existing at the time of the adoption of this Ordinance, although such use does not conform to the provisions hereof, may be continued, but if such nonconforming use is discontinued any further use of said premises shall be in conformity with the provisions of this Ordinance.

258–2. The lawful use of a building existing at the time of the adoption of this Ordinance may be continued although such use does not conform with the provisions hereof, and such use may be extended throughout the building, and such nonconforming use may be extended to the entire parcel of ground immediately adjacent to such nonconforming use, owned by the nonconforming user prior to the pas-

sage of this Ordinance for purposes germane to the nonconforming use.

■ We agree with defendant's contention that property which is subsequently annexed can be bound by an existing zoning ordinance and that the requirements of the State Enabling Statute need be followed only at the time the original ordinance was adopted. The Enabling Statute neither requires an amendment to a City's Zoning Ordinance nor a notice and hearing prior to its binding effect upon the plaintiffs' newly annexed property. The requirements of the State Enabling Statute pertain only to original zoning, and property annexed to a city becomes subject to the existing zoning ordinance of the annexing municipality at the time of the annexation.

Plaintiffs' contention that an existing zoning ordinance classification applicable to property which may be subsequently annexed is invalid as an exercise of extraterritorial zoning powers is without merit. The question of extraterritorial zoning powers is irrelevant and is not an issue in the case at bar. In adopting the zoning ordinance classifying all subsequently annexed property to the City of Park Ridge as "A" Residential, the City did not exercise any extraterritorial zoning powers upon the subject property but rather has exercised its zoning powers upon that property only subsequent to its annexation to the City.

■ Furthermore, subsequent to the annexation, the Illinois Legislature passed an enactment, Ill Rev Stats (1965), c 24, § 7–1–47, which provides that:

> The corporate authorities of any municipality may provide by ordinance that when territory is annexed to such municipality, the territory automatically is classified to the highest restrictive use under the annexing municipality's zoning ordinance.

Thus, it is our opinion that it was proper for defendant, pursuant to an ordinance, to automatically zone subse-

413

quently annexed property as "A" Residential, without following the requirements of the State Enabling Statute, other than at the time the original ordinance was adopted.

In support of their complaint for a writ of mandamus for the issuance of a building restaurant remodeling permit, plaintiffs contend that the property qualified as a legal nonconforming use, pursuant to the provisions found in section 258–1 of the Park Ridge Zoning Ordinance. Defendant agrees that the use of the property by plaintiffs' predecessors constituted a legal nonconforming use. Defendant points out, however, that on January 22, 1964, plaintiffs' predecessor filed a petition in bankruptcy and abandoned the use of the premises for restaurant purposes and that all rights as legal nonconforming use were abandoned and the property in question reverted to "A" Residential. We disagree with defendant.

██ ██ A claim that a nonconforming use has been abandoned must be shown by more than a mere cessation of use. McCoy v. City of Knoxville, 41 Ill App2d 378, 190 NE2d 622 (1963). It must appear that there is an intent to abandon the nonconforming use and a cessation of the use will not result in the loss of the right to resume such use. In the instant case, plaintiffs acquired the property and shortly thereafter, on August 7, 1964, applied for a restaurant remodeling permit. We hold there was no abandonment of the nonconforming use and plaintiff is entitled to an illuminated sign permit. The judgment of the lower court is reversed and the cause remanded with instructions to issue a writ of mandamus compelling the City of Park Ridge to issue a building restaurant remodeling permit and an illuminating sign permit.

The judgment is reversed and the cause remanded with directions.

BURKE and McCORMICK, JJ., concur.