ROOSEVELT MEMORIAL HOSPITAL et al., Plaintiffs-Appellees, v. HARRY F. CHADDICK et al., Defendants-Appellants.

(No. 53542;

First District—December 30, 1970.

Raymond F. Simon, Corporation Counsel, of Chicago, (Marvin E. Aspen and Marsile J. Hughes, Assistants Corporation Counsel, of counsel,) for appellants.

Notz, Craven, Mead, Maloney & Price, of Chicago, (John T. Mead, of counsel,) for intervening appellants.

Maurice J. Nathanson and M. J. Finkel, both of Chicago, (Paul Peter Black, of counsel,) for appellees.

Mr. JUSTICE RYAN delivered the opinion of the court:

Plaintiffs filed two applications under the zoning ordinance of the City of Chicago. The first sought is variation from the regulations of the Chicago Zoning Ordinance to permit the erection of a 5-story addition to a hospital whose rear yard, floor area and parking space would not comply with the requirements of the zoning ordinance. The second application sought a special use to permit the use of certain lots for off street parking to serve the needs of the hospital. The zoning board of appeals held a combined hearing on the two applications and denied both. Plaintiffs filed a complaint under the administrative review act praying that the court reverse the determinations of the zoning board and that the court order the zoning administrator to approve the applications of the plaintiff to enable it to build the 5-story addition to the hospital and to construct the parking lot. The Circuit Court of Cook County reversed the zoning board of appeals as to both the application for variation and the application for special use. It ordered the zoning administrator to approve the plaintiff's application for a building permit and for a parking lot. The defendants, being the zoning board of appeals, the zoning administrator and the City of Chicago have appealed.

The hospital, as lessee, occupies a 5-story building at 414-426 West

Wisconsin Avenue in Chicago. The proposed addition would be constructed on a parcel of real estate immediately north of the present hospital building attached thereto. The property upon which the addition is proposed to be built was acquired by the Department of Urban Renewal for sale to Roosevelt Hospital. The hospital was founded in 1946 and was then located on Wellington Avenue. In 1960 the hospital moved to the present location taking over the facilities of a Salvation Army Geriatric Center. Certain alterations were made in the building at that time. The hospital has capacity for 125 patients and the average monthly census is continually around 100% capacity. It now has 45 to 50 doctors on its active staff and employs 275 full-time employees working on three full shifts, about one-third of that number working on each shift. At the present time the hospital provides no on site or off street parking. If the variation is granted and the addition built, the hospital will have a capacity of 120 additional beds and about 125 more employees making a total capacity for patients in the entire hospital as proposed of 245 and a total number of employees of 400 with about one-third of that number working each shift. The number of doctors on its active staff will remain substantially the same after the proposed addition at from 45 to 50.

Both the property on which the present hospital is located and the property upon which the proposed addition is to be built are located in a residential area zoned R5, a classification which permits hospitals to be located therein.

The ordinance provides that in an R5 District the maximum floor area ratio shall not exceed 2.2. The lot area upon which the present hospital is located contains 10,900 square feet whereas the present building located thereon contains 40,945 square feet being 16,965 square feet in excess of the allowable area. The ordinance also provides that off street parking in case of hospitals shall be provided as follows:

"One parking space for each three hospital beds plus one parking space for each three employees plus on parking space for each doctor assigned to the staff."

Since no off street parking is provided, the hospital as it is now operated, likewise, is in violation of this provision of the ordinance. However, if the use of the premises by the Salvation Army as a Geriatric Center can be classified as a hospital, the ordinance makes an exception as to the parking space requirements for a use established prior to the effective date of the ordinance. We find it unnecessary to decide whether the present use does constitute a continuation of the prior use. However, the ordinance does provide that when the use of an existing building shall be increased through addition of gross floor area or other units of

measurements, parking and loading facilities shall be provided for the entire increase.

The new site upon which the proposed addition is to be built contains 15,948 square feet. Applying the allowable ratio of 2.2, the authorized floor area in the addition will be 34,095 square feet. However, the addition as proposed contains 59,980 square feet being 25,884 square feet in excess of the allowable area.

The minimum off street parking requirements for the addition only may be computed as follows:

120 beds at one space for every three beds equal 40 spaces; . . . . . . 40
42 new employees (125 x ⅓ per shift) at one space for
  each three employees equal 14 spaces; . . . . . . . . . . . . . . . . . . . . 14
                                                                                         —
Total off street parking spaces required for addition . . . . . . . . . 54

In order to provide off street parking, the hospital purchased five lots located approximately 160 feet from the hospital. This land is also located in an R5 district. This property is the subject of the hospital's request for a special use to permit the same to be used as a parking lot. There is some evidence offered by the objectors that this property will only provide 39 parking spaces. However, a letter from the Commissioner of Development and Planning to the Zoning Administrator granted approval of the parking facility for a capacity of 56 vehicles. The hospital has been trying to acquire additional property in the vicinity to be used for parking purposes but has been unable to do so.

The zoning ordinance provides that the board of appeals shall vary the regulations of the ordinance only in the specific instances therein set forth, where the board makes a finding of fact, based on the standards prescribed, that there are practical difficulties or particular hardships in the way of carrying out the strict letter of the regulations. Section 11.7-3 of the ordinance provides that the Board shall not vary the regulations as authorized in Section 11.7—4 "unless it shall make findings based upon the evidence presented to it in each specific case that:

"\* \* \*.

C. The variation, if granted, will not alter the essential character of the locality.

For the purpose of implementing the above rules, the board shall also, in making its determination whether there are practical difficulties or particular hardships take into consideration the extent to which the following facts favorable to the applicant have been established by the evidence.

(5) The granting of the variation will not be detrimental to the

public welfare or injurious to other property or improvements in the neighborhood in which the property is located; and

(6) The proposed variation will not impair adequate supply of light and air to adjacent property or substantially increase the conjestion in the public streets or increase the danger of fire or endanger the public safety or substantially diminish or impair property values within the neighborhood."

. Section 11.7—4 provides that the variations from the regulations may be granted "only in accordance with the standards set out in Section 11.7—3 and only in the following instances and no others:

"1. To permit any yard less than the yard required by the applicable regulations;

4. To reduce the applicable off street parking or loading required by not more than one parking space or loading berth or 20% of the applicable regulations, whichever number is greater * * *.

7. To allow any permitted non-residential use in a residence district to exceed the floor area ratio imposed by the applicable regulations."

From the above sections of the ordinance it is clear that the Board had the authority to grant the variation as to the yard requirements and the excess floor area, provided it could make findings of fact based upon evidence offered which compiled with the standards for variation set forth in Section 11.7—3.

After hearing the evidence, the Board found:

"That the excessive land coverage in this instance, together with inadequate off street parking, and which off street parking is disconnected from the hosiptal building, would have a deteriorating effect upon the neighborhood and would affect the essential character of the locality * * *."

These findings were contrary to the findings which the Board was required to make under Section 11.7—3 before it would be authorized to grant the variation. Accordingly, the Board refused to grant the variation requested.

The court in reversing the decision of the Board, insofar as the application for variation is concerned, made no determination that the finding of the Board was against the manifest weight of the evidence, but made specific findings as follows:

"3. The court finds that the Roosevelt Memorial Hospital, a corporation not-for-profit conducts a hospital open to the public, for the healing of the sick, and is operated and maintained in the public interest.

4. This appeal concerns two separate petitions filed by the plaintiffs before the zoning Board of Appeals. Calendar No. 73—68—Z involves

a request for a variation relative to floor area ratio in excess of that permitted by the zoning ordinance, as proposed, and as shown by the plan introduced in evidence, and the court finds that in respect thereto, the manifest weight of the evidence indicates:

(a) That the existing condition requires that the hospital expand as proposed, and that the variation if granted will not alter the essential character of the locality.

(b) That the purpose of the variation is to enable the Roosevelt Memorial Hospital to more adequately render service to the public, and that if the addition to the hospital is constructed as proposed, it will not be detrimental to the public welfare or injurious to other property or improvements in the neighborhood, nor was there any evidence that such improvements will impair an adequate supply of light and air to adjacent property."

■■ Section 274 of the Administrative Review Act (Ill. Rev. Stat., ch. 110, par. 274) provides that the findings and conclusions of the Administrative Agency on questions of fact shall be held to be *prima facie* true and correct. It is not within the province of a court to disturb the findings of fact made by the Administrative Agency unless these findings are against the manifest weight of the evidence. *Harrison v. Civil Service Commission*, 1 Ill.2d 137, 115 N.E.2d 521; *School Directors v. Wolever*, 26 Ill.2d 264, 186 N.E.2d 281; *Oratowski v. Civil Service Commission*, 3 Ill.App.2d 551, 123 N.E.2d 146.

■■ The court is not authorized to weigh the evidence nor to make its own independent determination of facts. *Harrison v. Civil Service Commission, supra.*

On administrative review the court's function is limited to ascertaining if the findings and decisions of the agency are against the manifest weight of the evidence. A court may examine the findings to determine if they are supported by the evidence. If there is competent evidence to support the findings the decision will be affirmed. *St. James Temple v. Board of Appeals*, 100 Ill.App.2d 302, 241 N.E.2d 525.

■■ From a comparison of the findings of the Board and those contained in the order of the court, both as set out above, it is apparent that the circuit court exceeded the limits which the law as announced in the above cited cases has placed on the scope of review by the courts of administrative agency decisions. The court did not limit its review to ascertaining whether there was competent evidence to support the findings of the Board or to whether the findings and decision of the Board were against the manifest weight of the evidence. Instead, the court, itself, weighed the evidence and then made its own independent

determination of what was proven by the manifest weight thereof. The court thereby went beyond the authorized scope of judicial review and its determination must be reversed.

The ordinance plainly limits the authority of the Board to vary the regulations only in the specific instances set forth and only in accordance with the standards as set forth in the ordinance, and then only upon findings as to these standards "based upon the evidence presented to it * * *." Since the hospital was seeking the variation the burden was on it to present evidence to the Board which would support the findings that the standards prescribed by the ordinance had been compiled with and not violated. The burden of proof was on the hospital to show clearly by competent evidence that it was entitled to the variance. *Brown v. Board of Zoning Appeals*, 21 Ill.App.2d 273, 157 N.E.2d 685; *St. James Temple v. Board of Appeals, supra*.

The hospital offered practically no evidence which related to the standards for variations as set forth in the ordinance. Nor did the hospital offer evidence from which the Board could make finding of fact concerning said standards as required by the ordinance. The evidence offered by the hospital primarily concerned the need for the hospital to expand and its inability to acquire additional land. The hospital offered no evidence that "the variation if granted will not alter the essential character of the locality." This is a finding under 11.7—3(c) of the ordinance which the Board must make based on the evidence presented to it before it can grant a variation. This same section of the ordinance requires the Board to consider whether the evidence indicates that the variation will substantially increase the congestion in the public streets, or endanger the public safety or substantially diminish or impair property values within the neighborhood. Here again, the hospital offered no evidence on these matters. The only evidence offered relating to the standards set forth in Sec. 11.7—3 of the ordinance was offered by the objectors. This evidence indicated that by virtue of the increased size and capacity of the hospital with an off street parking lot located some distance from the hospital there would be increased traffic congestion on the streets of a residential area. This evidence likewise indicates that the granting of the variation will be detrimental to the residential character of the neighborhood as stated above. The burden was not on the objectors to show that the proposed variations did not comply with the standards set forth in the ordinance. The burden was on the hospital to present evidence which would support a finding by the Board that the standards of the ordinance authorizing a variation were complied with.

In order for the decision of an administrative agency to be contrary

to the manifest weight of the evidence an opposite conclusion must be clearly evident. ( *Legones v. License Appeal Commission*, 100 Ill.App.2d 394, 241 N.E.2d 499.) Since the hospital presented no evidence in support of the standards for variation and the objectors presented evidence showing that the proposed variation would violate those standards, the denial of the application for variation and the findings in support thereof were not against the manifest weight of the evidence.

■■ As to the application for a special use of the five lots for a parking lot for the hospital, here again the hospital offered no evidence except as to the hospitals need for off street parking. The city contends that these five lots do not offer the number of parking spaces required by the ordinance. Therefore neither the Board nor the court has any jurisdiction to grant the special use. Disregarding the mathematical computation of the number of parking spaces required, we are of the opinion that the trial court erred in reversing the Board of Zoning Appeals decision on the application for special use.

Sec. 11.10—4 of the ordinance sets forth standards for special uses and states:

"No special use shall be granted by the zoning Board of Appeals unless the special use:

(1) a. Is necessary for the public convenience at that location;

b. Is so designed, located and proposed to be operated that the public health, safety and welfare will be protected; and

(2) will not cause substantial injury to the value of other property in the neighborhood in which it is located * * *."

The hospital offered no evidence as to these standards, whereas the objectors offered evidence as to danger to children because of the increased traffic on the streets going to and from the proposed parking lot. The objectors also offered evidence to show that the location of the parking lot would be a threat to the gradual increase in real estate values in the area.

The Board found that the location is residential in nature, many of the homes having been upgraded and renovated; that the introduction of a parking lot at this location will increase the congestion in the streets and the introduction of driveways in this residential block will not adequately protect the public safety and welfare and will cause injury to the value of property in the neighborhood.

The court in reversing the Board stated that these findings were manifestly against the weight of the evidence and stated that the standards set up in Section 11.10—4 of the zoning ordinance relating to special uses were met by the plaintiffs as indicated in the record.

With this conclusion of the trial court we cannot agree. In a special

use application as in an application for variation the burden is on the applicant to present evidence to the Board from which it can make findings that the standards imposed by the ordinance have been complied with. (*St. James Temple v. Board of Appeals, supra.*) The hospital offered no evidence except as to the need for parking space. It offered no evidence relating to public safety, welfare or the effect of the special use on real estate values. In view of the evidence offered by the objectors we are of the opinion that the Board's denial of the application for special use was correct and its finding in support of its decision is not against the manifest weight of the evidence.

Although the application for a variation and the application for a special use were separate applications and could have been determined independently, it appears that both were considered as part of the expansion program. It would appear that the special use of the lots as a parking lot, if considered in connection with the operation of the hospital at its present level would actually reduce congestion on the streets. In such a case, it would appear that the application for special use should have been allowed. Unfortunately, the application for the special use was not so considered and the applicant presented no evidence as to what the conditions would be if the parking lot were used in connection with the present hospital. Consequently, the Board had nothing upon which to base the findings required by the ordinance relating to the standards for special use, even if the special use were considered in connection with the present hospital and not in connection with the proposed expansion.

■■ In both the application for the variation and the application for the special use, the hospital did not sustain its burden of presenting evidence from which the Board could find that the requisite standards had been met.

The persons who appeared before the Board of Zoning Appeals hearing and objected to the application for variation and the application for special use were not made parties defendant in the administrative review proceeding in the Circuit Court. They have filed a brief herein as "intervening defendants-appellants." It is their contention that this court should reverse the trial court because they were proper parties and should have been made parties in the Administrative Review Case. Since we are reversing the decision of the trial court on other grounds, we deem it unnecessary to decide this point.

Judgment reversed and orders of Board of Zoning Appeals affirmed.

STOUDER, P. J., and ALLOY, J., concur.