THE CITY OF DES PLAINES, Plaintiff-Appellant, v. LA SALLE NATIONAL BANK OF CHICAGO, Trustee, et al., Defendants-Appellees.

First District (3rd Division)   No. 62244

Opinion filed December 16, 1976.

DiLeonardi & O'Brien, Ltd., of Des Plaines (Thomas J. O'Brien and Robert S. Minetz, of counsel) for appellant.

William R. Jacobs II, of Des Plaines (Jacobs, Zimmerman, Bochte, Camodeca & Timpone, of counsel), for appellees.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion:

The city of Des Plaines brought this action alleging that defendant landowners had abandoned their nonconforming use of an office building. Des Plaines sought the imposition of a fine for violation of section 9.1 of its zoning ordinance. Defendants filed a counterclaim seeking damages resulting from alleged interference by Des Plaines with defendants' efforts to lease the premises. Des Plaines filed a motion for summary judgment. Defendants filed an answer to the motion and sought a preliminary injunction to have Des Plaines restrained from preventing tenants from occupying the premises. Des Plaines sought to have defendants enjoined from using the property for commercial purposes. The trial court denied the motion for summary judgment and the respective injunctive requests. The court also severed the counterclaim, and the trial proceeded on the complaint of Des Plaines. After a trial without a jury, the court, on April 17, 1975, dismissed the complaint. The judgment also enjoined Des Plaines from interfering with defendants' continued use of the premises for commercial purposes. Des Plaines has appealed.

The defendant bank is the trustee and legal titleholder under two trust agreements of a two-acre tract of land located in the downtown area of Des Plaines. Defendants Robert and Ann Dooley are the beneficial owners under one trust agreement of that section of the tract comprising about 2200 square feet and located at the intersection of Miner Street and Des Plaines. A one-story office building presently occupies the parcel owned by defendants.

At all times, the parcel on which defendants' office building is located was zoned in relation to and as a part of the entire two-acre tract. Therefore, although this appeal concerns only the use of the portion of the

property on which the office building is situated, descriptions of zoning of the surrounding area shall of necessity relate to the entire two-acre tract.

The property located immediately to the north is zoned residential and is occupied by single-family residences and a filling station. South of the property across Miner Street is a railroad right-of-way and adjoining the right-of-way is property zoned for high rise commercial use. The area to the west of the office building in question is also zoned for high rise commercial use.

Robert Dooley was called as an adverse witness by Des Plaines and later testified on his own behalf. His testimony was as follows: In 1960, Dooley erected the one-story office building on the southwest corner of the two-acre tract. At that time the entire tract was zoned C-2 which allowed commercial use of the property. He used the building as an office until 1967 when it was leased as a real estate office. In 1971 the tenants became delinquent in paying rent and, in August 1971, were evicted. Dooley then engaged a real estate agency to assist him in obtaining another tenant for the office building. Up to October 1971, negotiations were entered into with three prospective tenants. None of these negotiations resulted in the signing of a lease.

In May 1971, on behalf of all the beneficial owners of the two-acre tract, Dooley had petitioned to have the entire tract rezoned from commercial to high rise residential use. The petition for rezoning, among other conditions, recited that the one-story office building would remain as a nonconforming use. In September 1971, the Des Plaines City Council adopted an ordinance rezoning the two-acre tract to R-5, a multiple-family district.

During November and December, 1971, negotiations continued to secure a tenant for the office building. Numerous inquiries were received following the posting of a "For Rent" sign on the building in October. In February 1972, three possible tenants were considered. On March 13, 1972, Dooley called the city attorney. The latter informed Dooley that under the city ordinance a nonconforming use of property is presumed abandoned if the property remains vacant for four months. The city attorney told Dooley to write to the zoning administrator concerning the status of the office building.

In a letter to Mr. Prickett, the zoning administrator, Dooley stated that the previous tenant had been evicted from the premises for nonpayment of rent. He explained that since then, continuous efforts had been made to secure a substitute tenant. Electrical service for the building had been continued. Dooley also wrote that mortgage payments of $200 per month made it impossible for him to abandon commercial use of the property. No reply to the letter was received by Dooley. The letter was admitted into evidence without objection.

Sometime prior to June 1972, a lease was negotiated with a representative of Kirby Vacuum Cleaners. The lessee obtained a city building permit for the purpose of repairing the front of the building. During the earlier tenancy, an automobile had struck the building damaging one of the front windows. The window was boarded up, and the tenant continued operation of their business. The permit subsequently was torn from the building by the zoning administrator. Kirby was prevented from occupying the premises, and its deposit was refunded by the rental agent.

From August to November 1972, the office building was occupied by the McGovern for President Committee at a rent of $250 per month. In response to a letter from the zoning administrator, Dooley, on August 28, 1972, wrote that the zoning administrator's action permitting the continued occupancy by the McGovern committee would be construed as evidence that the presumption of abandonment of commercial use had been rebutted.

After the McGovern committee vacated the premises in November, the building was vacant until March 1973. At that time a local political committee occupied the premises for a month.

On December 10, 1973, Dooley executed a lease with Elmac Corporation. Elmac, however, never occupied the building. Dooley then sublet the premises to S & H Electric Company. That tenant moved into the building in February 1974, but vacated the premises after receiving a letter from Mr. Michael Richardson, the new zoning administrator. Richardson informed S & H that its occupancy violated the city ordinance, and that its continued occupancy could result in large fines.

Mr. Richardson, who had replaced Prickett as zoning administrator in 1973, testified in behalf of Des Plaines. He stated that the two-acre tract was not rezoned pursuant to any comprehensive plan, but was the product of the petition filed by Dooley. Richardson also testified that his office was located across from defendants' office building, and that it had remained unoccupied for periods of more than four months.

The trial court, in dismissing the complaint against defendants, stated that the evidence did not establish that defendants intended to abandon commercial use of the property within the meaning of section 9.1 of the zoning ordinance of the city of Des Plaines.

Des Plaines first contends that defendants' failure to exhaust their administrative remedies prior to the trial court's ruling warrants reversal of the judgment. Des Plaines seeks to invoke the doctrine enunciated in *Bright v. City of Evanston* (1956), 10 Ill. 2d 178, 139 N.E.2d 270, whereby one must exhaust administrative remedies before an attack on the application of a zoning ordinance to a particular piece of property can be maintained. Des Plaines relies upon *Lunar Oil Co. v. Landendorf*

(1970), 131 Ill. App. 2d 487, 266 N.E.2d 782, to support its assertion that the *Bright* rules is applicable to the present case. In *Lunar*, this court held premature an action seeking a mandamus to compel issuance of a business license for the operation of a gas station which constituted a nonconforming use. The petitioner's request had been refused by the zoning administrator on the grounds that such use had been abandoned. Thereafter, petitioner sought judicial relief instead of appealing the decision of the zoning administrator to the zoning board of appeals as provided by the applicable zoning ordinance. It was deemed that petitioner's failure to proceed along the designated administrative channels precluded the trial court from granting the requested relief.

■■■ As recognized in *County of Lake v. MacNeal* (1962), 24 Ill. 2d 253, 181 N.E.2d 85, the *Bright* rule is an expression of judicial policy prompted by the legislative and administrative nature of zoning. The purpose of the rule is to provide an opportunity for local authority to settle disputes before judicial intervention. The case acknowledged that there exists a substantial difference between the property owner who seeks to declare an ordinance unconstitutional as to his property and land owners summoned into court to defend against an ordinance violation. To require the latter to pursue local relief when the attitude of the local authority has been clearly demonstrated would impede the swift administration of justice. (*County of Lake v. MacNeal.*) Such reasoning is applicable to the present case. These defendants were charged with an ordinance violation resulting from their alleged abandonment of a nonconforming use. Des Plaines assumes an anomalous position when it asserts that defendants must apply to its offices for an extension of their nonconforming use when the filing of the present action was an explicit pronouncement by Des Plaines that such use was considered abandoned. Moreover, defendants' previous efforts to elicit administrative approval had been ignored. Nor do we find any merit in the argument of Des Plaines that defendants, by filing a counterclaim seeking affirmative relief, brought this action within the *Bright* rule. The judicial proceedings were initiated by Des Plaines, and there was no requirement that defendant seek any further administrative relief.

Des Plaines also contends that defendants' failure to file a written reply to Des Plaines' assertion of an affirmative defense charging failure to exhaust administrative remedies in its answer to defendants' counterclaim constituted an admission that defendants' sole remedy lay in an action for administrative review. Des Plaines argues that such failure with its consequent admission warrants reversal of the court's judgment.

In our view, the argument of Des Plaines in this instance reflects a misapprehension of the procedural aspects of the present case. This appeal is limited to a review of the proceedings conducted pursuant to

the complaint of Des Plaines. Defendants' counterclaim was severed from Des Plaines' complaint prior to trial. Any pleadings defect, if there was one, relative to that counterclaim is irrelevant to the instant case.

Des Plaines finally contends that defendants failed to overcome the presumption that they had abandoned their nonconforming commercial use of the office building. Section 8(d)(3) of the Des Plaines Zoning Ordinance provides that a nonconforming use is presumed abandoned if the structure designed or intended for such use remains vacant for a period of four months. Des Plaines argues that merely by showing that the premises were unoccupied for a four month period it has demonstrated conclusively that the commercial use was abandoned and that judgment must be rendered in its favor as a matter of law.

■■ To adopt the position asserted by Des Plaines would emasculate the long standing principle that an intent to abandon a nonconforming use must be established before the owner of the property will be precluded from using his property in a manner which is contrary to the applicable zoning regulations. (*Brown v. Gerhardt* (1955), 5 Ill. 2d 106, 125 N.E.2d 53.) A nonconforming use is a property right of which the owner cannot be unreasonably and arbitrarily deprived. (*McCoy v. City of Knoxville* (1963), 41 Ill. App. 2d 378, 190 N.E.2d 622.) The mere cessation of use will not necessarily result in loss of the right to resume such nonconforming use. An actual intent to abandon the use must be demonstrated. *People ex rel. Trebat v. City of Park Ridge* (1969), 110 Ill. App. 2d 404, 249 N.E.2d 681.

■■ In the present case, we agree with the trial court's determination that the evidence was insufficient to establish that defendants intended to abandon their nonconforming commercial use of the office building. Defendants' petition for rezoning recited that the office building would remain and constitute a nonconforming use. Subsequently, tenants were evicted from the premises for nonpayment of rent. At trial defendant Dooley testified to continued efforts to procure a tenant. Such actions in no way exhibit an intent to abandon commercial use of the property. The continuation of electrical service and the substantial monthly mortgage payments further evidence an intent to utilize the property for commercial purposes. Moreover, it is undisputed that the office building is unsuitable for residential purposes.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

MEJDA and McGLOON, JJ., concur.