CRAIG HAMMOND *et al.*, Appellants, v. THE CITY OF CHICAGO *et al.*, Appellees.

First District (2nd Division)   No. 84—2644

Opinion filed December 10, 1985.

Hammond & Kubaszewski, of Chicago, for appellants.

James D. Montgomery, Corporation Counsel, of Chicago (Philip L. Bronstein and Sharon Baldwin, Assistant Corporation Counsel, of counsel), for appellees City of Chicago, Zoning Board of Appeals of the City of Chicago, Jack Guthman, George J. Cullen, Michael J. Howlett, Thomas P. Keane, Harry Manley, and Michael Nardulli.

David A. Weininger, of Teitelbaum, Wolfberg, Guild & Toback, P.C., of Chicago, for appellee Louis Fasco.

JUSTICE HARTMAN delivered the opinion of the court:

A circuit court administrative review, which affirmed the decision of the zoning board of appeals, is the subject of this appeal. We are asked to decide whether the circuit court correctly affirmed the Chicago Zoning Board of Appeals' decision granting a substitution of use to defendant Louis Fasco (Fasco) permitting him to operate a wholesale bakery in a nonconforming building located in an R4 general residence zoning district.

On December 7, 1983, the city of Chicago zoning administrator rejected Fasco's application for a substitution of use in the building located at 1132-44 North Damen Avenue in Chicago. The building was originally designed for and occupied by commercial and manufacturing uses some time prior to 1957 and housed nonconforming uses

since the adoption of Chicago's Comprehensive Zoning Ordinance of 1957, including a food processing and distribution warehouse, a furniture warehouse, and an automobile showroom and repair shop. Under the 1942 comprehensive amendment to the zoning ordinance of Chicago, the property was zoned commercial.

The Chicago Zoning Board of Appeals had sustained the establishment of nonconforming uses on the subject property previously in both 1967 and 1972 in compliance with section 6.2 of the Municipal Code of Chicago, which provides:

> "Any non-conforming use, building or structure which existed lawfully at the time of the adoption of this comprehensive amendment and which remains non-conforming, and any such use, building or structure which shall become non-conforming upon the adoption of this comprehensive amendment *** may be continued, some for specified and respective periods of time, subject to the regulations which follow." (Municipal Code of Chicago, Zoning Ordinance, ch. 194A, sec. 6.2 (1984-85).)

The most recent use of the property was by Martinez Brothers Incorporated, which used it for food processing and distribution. Martinez Brothers leased the building from Alfonso Martinez (Alfonso), a shareholder and chief operating officer of Martinez Brothers, for $1,305 per month.

On August 10, 1979, Martinez Brothers filed a voluntary petition in bankruptcy, showing the National Bank of Greece (bank) as one of its secured creditors, and listing the property at 1132-44 North Damen as the security. The Small Business Administration was a junior mortgagee on the property. The property, which had been mortgaged to the bank by Alfonso individually and not by Martinez Brothers, was then held in trust by the Exchange National Bank as trustee. Martinez Brothers continued to use the building until August or September of 1980. Since that time the building has been vacant.

On November 24, 1981, Martinez Brothers was discharged in bankruptcy. There was no disposition of the property at 1132-44 North Damen, nor any indication in the record as to if, when or how the property was determined to have been outside the bankruptcy proceedings. Seven months later, on July 9, 1982, the bank filed a foreclosure action on Alfonso's mortgage. On December 10, 1982, an order of foreclosure was entered with a finding that the property had been "abandoned" by Alfonso Martinez as of May 19, 1982.

On January 20, 1983, the bank purchased the subject property for $70,537.94 at a sheriff's sale. At an unspecified time prior to July 20, 1983, Fasco, owner and operator of Las Villas Bakery, entered into an

agreement with the bank to purchase the property contingent upon Fasco's obtaining the proper "licensing" to operate a wholesale bakery. Pursuant to that agreement, Fasco applied to the zoning administrator for a substitution of use, which was rejected as noted above. Fasco appealed to the zoning board of appeals the following day. The board held a hearing on March 23, 1984, and issued a decision reversing the administrator on April 2, 1984, finding specifically that Martinez Brothers had

> "filed for bankruptcy in 1979 and [that those] \*\*\* proceedings had been in litigation until February, 1983 when the appellant [Louis Fasco for National Bank of Greece] took deed of the subject site property; that the change of use from a food processing plant and wholesale food distribution warehouse to a wholesale bakery is a proper substitution of use under Section 6.4—7 of the zoning ordinance \*\*\*."

Plaintiffs, objectors to Fasco's appeal at the zoning board hearing, thereupon filed an action for administrative review with the circuit court of Cook County. The circuit court affirmed the decision of the board on September 24, 1984. This appeal followed.

■■ Our function in this appeal is limited to ascertaining whether the findings and conclusion of the agency on questions of fact, which must be considered *prima facie* true and correct (Ill. Rev. Stat. 1983, ch. 110, par. 3—110, formerly Ill. Rev. Stat. 1979, ch. 110, par. 274), are against the manifest weight of the evidence; they may be disturbed only if a review of the record demonstrates that they are against the manifest weight of the evidence. *Roosevelt Memorial Hospital v. Chaddick* (1970), 131 Ill. App. 2d 82, 266 N.E.2d 755.

Plaintiffs contend that Fasco was not entitled to a nonconforming use at the subject property because Alfonso, the previous owner, had allowed the use to lapse, relying on section 6.4—5 of the Municipal Code of Chicago, which provides:

> "Discontinuance of Use of Non-Conforming Building or Structure. A building \*\*\* which is designed or intended for a use which is not permitted in the district in which it is located, which \*\*\* becomes vacant and remains unoccupied or is not used for a continuous period of one year, shall not thereafter be occupied or used except by a use which conforms to the use regulations of the district in which it is located." (Municipal Code of Chicago, Zoning Ordinance, ch. 194A, sec. 6.4—5 (1984-85).)

Plaintiffs, in applying section 6.4—5, would alternatively start the one year discontinuance period at: (1) August or September of 1980, the

point at which Martinez Brothers stopped using the property; (2) November 24, 1981, the date that Martinez Brothers was discharged in bankruptcy; or (3) May 19, 1982, the date that was adjudged by the circuit court in the foreclosure proceedings as the date Alfonso "abandoned" the subject property. Defendants' countervailing argument is that the discontinuance period did not run during the pendency of either the bankruptcy or foreclosure proceedings.

The right to a nonconforming use is a property right which cannot be denied for reasons not based upon the public welfare. (*Western Theological Seminary v. City of Evanston* (1927), 325 Ill. 511, 156 N.E. 778; *Douglas v. Village of Melrose Park* (1945), 389 Ill. 98, 58 N.E.2d 864; *Brown v. Gerhardt* (1955), 5 Ill. 2d 106, 125 N.E.2d 53.) The appellate court in *People ex rel. Trebat v. City of Park Ridge* (1969), 110 Ill. App. 2d 404, 414, 249 N.E.2d 681, stated that a claim of nonconforming abandonment must be shown by more than a mere cessation of use; it also requires an intent to abandon. To the same effect are *City of Des Plaines v. La Salle National Bank* (1976), 44 Ill. App. 3d 815, 358 N.E.2d 1198, *McCoy v. City of Knoxville* (1963), 41 Ill. App. 2d 378, 190 N.E.2d 622, and *People ex rel. Delgado v. Morris* (1948), 334 Ill. App. 557, 79 N.E.2d 839. In *Trebat,* a previous owner's bankruptcy and subsequent cessation of use alone were held insufficient to establish a discontinuance.

Plaintiffs' reliance upon *City of Chicago v. Cohen* (1977), 49 Ill. App. 3d 342, 364 N.E.2d 335, is misplaced. The ordinance construed in *Cohen* (Municipal Code of Chicago, Zoning Ordinance, ch. 194A, sec. 6.5—2 (1984-85)), although similar in some respects to section 6.4—5, the ordinance central to this cause, applies to *nonconforming* uses in structures that were designed for *conforming* uses; in significant contrast, section 6.4—5 applies to *nonconforming* uses in structures originally designed for *nonconforming* uses. The owner in *Cohen,* even after losing the nonconforming use of his property, was in a position to use his property for its originally intended purpose. Conversely, in the present situation, the building was actually constructed and intended for a use which is now nonconforming. The effect upon the property owner in *Cohen* is minimal when compared to the prospective effect upon Fasco.

The ordinances are also distinguishable by virtue of their respective amortization periods. The zoning ordinance provides for the gradual elimination of nonconforming uses over various periods of time. (Municipal Code of Chicago, Zoning Ordinance, ch. 194A, secs. 6.4—8, 6.5—4 (1984-85).) For nonconforming uses established in presently *conforming* structures, the ordinance provides for an elimination per-

iod of either 13 or 15 years (Municipal Code of Chicago, Zoning Ordinance, ch. 194A, secs. 6.5—4(1)(a), 6.5—4(1)(b) (1984-85)) measured from the effective date of the ordinance in 1957 and exempts residential and certain light business uses (as in *Cohen*). (Municipal Code of Chicago, Zoning Ordinance, ch. 194A, sec. 6.5—4 (1984-85).) Nonconforming uses in nonconforming use structures however, as in the case *sub judice,* have elimination periods based upon an amortization schedule which contemplates the building construction types involved. (Municipal Code of Chicago, Zoning Ordinance, ch 194A, sec. 6.4—8 (1984-85).) The elimination periods vary from 25 to 60 years and are measured from either May 29, 1957, or the issuance date of the structure's building permit. (Municipal Code of Chicago, Zoning Ordinance, ch. 194A, sec. 6.4—8(3) (1984-85).) In accordance with these provisions, most nonconforming uses in structures designed for conforming uses were eliminated between 1970 and 1972. In contraposition, the elimination period for nonconforming use structures may extend from 1982 until 2017.

The bankruptcy code provides for an automatic stay of proceedings pending resolution of the bankruptcy. (11 U.S.C. sec. 362 (Supp. II 1978).) Once the subject property was listed in the bankruptcy proceedings, it was subject to the automatic stay. No authority is cited which supports plaintiffs' theory that the bank should have acted to lift the automatic stay in order to obviate the conclusion that the nonconforming use was abandoned. Therefore, the board of appeals and the circuit court properly suspended the running of the one-year discontinuance period during the time that the property was subject to the automatic bankruptcy stay. *People ex rel. Trebat v. City of Park Ridge* (1969), 110 Ill. App. 2d 404, 414, 249 N.E.2d 681.

A mortgage foreclosure action may ultimately lead to a determination of rights to ownership, possession and occupancy of property, as it did in this case. Although Alfonso may have "abandoned" the property as found by the circuit court in the foreclosure proceedings, the same cannot be said for the foreclosing bank, which ultimately purchased the property and with it the right to the nonconforming use previously possessed by Alfonso. (*Schneider v. Board of Appeals* (1949), 402 Ill. 536, 84 N.E.2d 428; *People v. Smith* (1976), 38 Ill. App. 3d 798, 349 N.E.2d 91.) Foreclosure proceedings thus may be so intrinsically related to the use of property that they, too, warrant a suspension of the discontinuance period.

■ The zoning board of appeals' chairman asserted that the board always takes the position that when property is "tied up" in court as was the subject property, the continuous period of abandon-

ment required by ordinance "does not run." The practical construction of an ordinance by an administrative agency, as in the case at bar, will be given deference unless it is clearly erroneous, arbitrary or unreasonable. (*Fried v. Danaher* (1970), 46 Ill. 2d 475, 478, 263 N.E.2d 820; *WIPE v. Pollution Control Board* (1977), 55 Ill. App. 3d 475, 479-80, 370 N.E.2d 1176.) We cannot say here that the zoning board's decision under these facts was erroneous, unreasonable or arbitrary.

From the foregoing, we conclude that the decision of the zoning board of appeals was neither against the manifest weight of the evidence nor contrary to law. Nor is an opposite conclusion clearly evident. (*Dante v. Police Board* (1976), 43 Ill. App. 3d 499, 502, 357 N.E.2d 549, *appeal denied* (1977), 65 Ill. 2d 577.) Accordingly, the decision of the circuit court affirming that of the zoning board of appeals must itself be affirmed.

Affirmed.

STAMOS, P.J., and BILANDIC, J., concur.