J. BEIDLER CAMP et al., Plaintiffs, Appellees, v. THE CITY OF EVANSTON, Defendant-Appellant—(THE CITY OF EVANSTON, Defendant-Appellant, v. J. BEIDLER CAMP et al., Plaintiffs-Appellees.)

(No. 54736;

First District—December 17, 1971.

Jack M. Siegel, of Evanston, (James B. Soble, of counsel,) for appellants.

Ross S. Welch, of Chicago, for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

The original complaint of J. Beidler Camp and Carmen T. Camp ("plaintiffs" herein) sought a declaratory judgment declaring their right to maintain a multiple-dwelling unit in a single-family dwelling district and enjoining the City of Evanston ("defendant" herein) "from taking any steps whatsoever to prevent plaintiffs from using aforesaid third-floor dwelling unit together with the sink, gas stove and refrigerator in such unit. In a second complaint the City of Evanston brought a quasi-criminal action against J. Beidler Camp for violation of the City's zoning ordinances by maintaining a multiple-dwelling unit in a single-family dwelling district. The complaints were consolidated and proceedings were had under the title of "Camp, et. al. v. City of Evanston."

After evidence on both causes was heard by the trial court, the court found the use of the third-floor unit to be a legal non-conforming use and the City's ordinance as applied thereto to be unconstitutional. Plaintiffs' right to maintain the unit was declared and defendant was

enjoined from interferring with its use. The quasi-criminal complaint against plaintiff was dismissed. The City appeals from the judgments entered on both complaints, contending that the evidence established neither a legal non-conforming use nor the unconstitutionality of the ordinance.

The subject property is located at the southwest corner of Asbury Avenue and Dempster Street in Evanston. The buildings on the property, a house and garage, were built in 1908. There is a housekeeping unit over the garage which is a permissible use under the zoning ordinance and is not in question. The property has been classified for single-family use since the first zoning ordinance was adopted by the City of Evanston in 1921.

Immediately south of the subject property along the west side of Asbury Avenue are six single-family homes. Immediately west of the subject property along the south side of Dempster Street are a single-family residence, a legal non-conforming two-family dwelling, and another single-family residence. Lying to the north along the north side of Dempster Street are several single-family homes and an old factory building being converted to a single-family residence. On the east side of Asbury Avenue are single-family residences with the Loudy Educational Center and a synagogue on the southeast corner of Asbury Avenue and Dempster Street. At the northeast corner of Asbury and Dempster is the district headquarters building for School District 65 with an adjacent building used for storage of District supplies and for repairs to District equipment.

Seven witnesses testified for the plaintiffs.

J. Beidler Camp, one of the plaintiffs, testified that he resides on the subject property at 1250 Asbury Avenue, Evanston, Illinois and that he is presently engaged in the real estate management business. He acquired ownership of the subject property in 1948 for the sum of $46,500, and at the time he purchased the property the third-floor dwelling unit was being rented out for $75 a month. Camp stated that there is presently a dwelling unit on the first and second floors of the property, a second dwelling unit above the garage, and a third dwelling unit on the third floor of the premises.

On cross-examination, Mr. Camp stated that in 1961 he filed an affidavit with the City of Evanston that the subject property was being used as a rooming house, which affidavit mentioned only the garage apartment. Subsequently in 1965, Mr. Camp filed another affidavit with the City of Evanston indicating that a sink, refrigerator and range were then on the third floor of the premises.

Mr. Harvey Kushner, a plumber, testified that he examined the plumbing fixtures in the third-floor dwelling unit, and that, based upon the materials used, his opinion was that the plumbing was installed prior to 1920.

Richard C. Phalen, a real estate broker, testified that the traffic volume in the City of Evanston has increased substantially since 1920 and that the traffic pattern on Dempster and Asbury Streets is now regulated by traffic signals and lane controls. He testified that the present value of the subject property is about $55,000, and that the value of the subject property if used without the presence of the sink in the third-floor dwelling unit would be $50,000. He further testified that the original owner of the property, Dr. Black, a dentist, occupied the premises from the time it was constructed in 1908 until 1942.

John Schraw, an architect, testified that he inspected the third-floor dwelling unit, examining the construction material, and that in his opinion the rooms on the third floor were installed at the same time the house was constructed. On cross-examination, Mr. Schraw testified that he did not know whether or not the kitchen facilities on the third floor were put in when the house was constructed.

Harry C. Kowatz, an electrician, stated that he inspected the third-floor dwelling unit at the subject property and that in his opinion the electrical wiring in and around the third floor dwelling unit was the same as in the residence generally.

Robert C. Wheeler, Director of Planning and Conservation for the City of Evanston, was called by plaintiffs as an adverse witness. He testified as to the surrounding uses and zoning. He testified that the subject property is in an R-1 zoning classification and that there are several legal non-conforming uses in the area.

Carmen T. Camp, one of the plaintiffs, testified as to the effect of the use of the repair shop owned by the School District, which was at the opposite corner of Asbury and Dempster Streets from the subject property. She testified that at certain times, noises were emitted from that building. On cross-examination, Mrs. Camp testified that such noises were heard only during the daytime hours and that she had never made any complaints about those noises.

Three witnesses testified for the defendant.

Robert C. Wheeler, the City Planner for the City of Evanston, described the subject property as being classified in an R-1 Single-Family Residence District of the City, and further described the zoning and land use development within the vicinity of the subject property. He testified that certain non-conforming uses and structures other than

single-family residence in the surrounding area were being converted to conforming uses and single-family residences. He further testified that in his opinion the highest and best use of the subject property would be for single-family residence purposes; that the character of the surrounding area is single-family; and that the use of the subject property as a multiple-dwelling unit would be detrimental to the character of the area.

Donald A. Jacobson, Conservation Inspector for the City of Evanston, testified that his duties are to determine compliance with the housing and zoning codes of the City of Evanston. That in April of 1965, in the course of his duties, he inspected the subject property. At the time of the inspection, the principal building contained two dwelling units and an additional dwelling unit was maintained on the second floor of the garage. He testified that at the time of such inspection, he asked Mrs. Camp when they began renting out the third-floor dwelling unit to roomers, and that she thought that they began letting this apartment around 1950. He stated that he subsequently filed a complaint against this property and that the result of said complaint was the quasi-criminal action now consolidated with this case. He further testified that he examined directories of the City of Evanston and that such directories showed that up until 1939 only one name was listed for the address of the subject property. He also testified that he instructed the plaintiffs to remove the kitchen facilities from the third floor apartment in 1965.

Buell Dutton testified that he was Director of Buildings for the City of Evanston and that he is the custodian of the records of the Building Department of the City of Evanston. Mr. Dutton testified that among the records of the City, there are two affidavits executed by Mr. Camp pertaining to the use and occupancy of the subject premises. He testified that defendants' Exhibit 4A was a certificate of use and occupancy for a lawful non-conforming use in accordance with the provisions of the Evanston Zoning Ordinance, and that such certificate permitted a dwelling unit in an accessory building located in an R-1 single-family district. Mr. Dutton testified that according to the records of the Building Department of the City of Evanston, no application was made or permit allowed for any person to put an apartment on the third floor of the subject property.

*Opinion*

We turn first to defendant's argument on appeal that the evidence failed to establish a legal non-conforming use. The relevant sections of the Zoning Ordinance declare:

USE, NON-CONFORMING. Any building, structure or use lawfully established prior to the effective date of this ordinance which does

not comply with all of the applicable use regulations of the zoning district in which such building or premises is located.

and,

AUTHORITY TO CONTINUE NON-CONFORMING BUILDINGS, STRUCTURES AND USES. Any non-conforming building, structure or use which exists lawfully at the time of the adoption of this ordinance and which remains non-conforming * * * may be continued * * *

The ordinance was adopted and became effective in 1921.

In *Jacobson v. Village of Wilmette* (1949), 403 Ill. 250 at 256 the court said:

A "nonconforming use" is defined by the ordinances to be a building or premises occupied by use that does not conform to the regulations of the use district in which it is situated. The ordinances provide, however, that the lawful use of a building or premises existing at the time of the adoption of the ordinance may be continued, although such use does not conform to the provisions thereof, and such use may be extended throughout the building or premises.

Thus, in order to demonstrate a legal non-conforming use plaintiffs must prove that the use of the third-floor separate dwelling unit, which is admittedly contrary to present zoning regulations, was established prior to the 1921 adoption of the zoning ordinance.

Plaintiffs' evidence indicates that the third-floor plumbing, electrical wiring and fireplace now being used are original installations, dating to the construction of the structure in 1908. However, there is no evidence that the third floor was used as a separate dwelling unit at the time of the adoption of the zoning ordinance. The earliest indication of a second occupancy within the house is a 1939 city directory listing of a second name at the address. An affidavit filed with the City of Evanston by plaintiff J. Beidler Camp on August 31, 1961, in support of an application for a Certificate of Use and Occupancy states that the only nonconforming use then in existence on the subject property was the garage apartment. In addition, the Evanston Conservation Inspector testified that in 1965 Mrs. Camp stated to him that plaintiffs began to rent out the third floor to roomers around 1950.

■■ Thus, though the evidence indicates that structurally plaintiffs' property is unchanged from its pre-ordinance condition, there is a complete failure of proof which would tend to demonstrate establishment of a separate third-floor housekeeping unit prior to adoption of the ordinance. We, therefore, must conclude that plaintiffs failed to prove a lawful non-conforming use.

Defendant next contends that the court erred in finding the ordinance

unconstitutional as applied to plaintiffs' property. Defendant asserts that the evidence fails to overcome the presumption of validity in favor of the City's zoning ordinance. See *Trendel v. County of Cook* (1963), 27 Ill.2d 155 at 161.

■■ Plaintiffs argue that the application of Section VI B 2-h of the zoning ordinance (defining Special Uses in the R-1 Single-Family Residence District) which, in effect, prohibits maintenance of a third-floor housekeeping unit (the third housekeeping unit on their premises) is unreasonable and arbitrary. It provides as follows:

"Where a single-family detached dwelling with not less than 4,000 sq. ft. of floor area is located on a lot not less than 15,000 sq. ft. in area, a second dwelling unit located in an existing building accessory to the principal dwelling may be allowed; provided that such second dwelling unit shall not contain living quarters for roomers, lodgers or permanent guests."

Plaintiffs point out that another section of the ordinance, Section IV M 2 declares in part:

"Where the floor area of a dwelling unit exceeds one thousand (1000) square feet, and the 'Family' occupying said dwelling unit does not consist of unrelated persons, said dwelling unit may also be used for living quarters for not more than two servants, roomers, or permanent guests, provided that said living quarters are located within and are physically an integral part of the dwelling unit."

The ordinance defines "Dwelling Unit" as:

"A room or group of contiguous rooms which include facilities which are used or are intended to be used for living, sleeping, cooking and eating, and which are arranged, designed or intended for use exclusively as living quarters for one family maintaining a single and separate housekeeping unit, except as provided in Section IV, Part M, of this ordinance."

At trial defendant's counsel conceded that plaintiffs could comply with the ordinance, while continuing to rent the third floor to two roomers, by removing the kitchen stove and refrigerator so as to eliminate its character as a separate house-keeping unit. Plaintiffs contend that the ordinance as thus applied bears no relation to the public health, safety, morals and welfare but rather has only the effect of reducing the value of plaintiffs' property. Testimony indicated that enforcement of the restriction would lower the monthly rental value from $125 received for the unit equipped with the stove and refrigerator to about $75 after their removal and lessen the value of the property from $55,000 to $50,000.

In *La Salle National Bank v. County of Cook* (1957), 12 Ill.2d 40 the court said at page 47:

"No one factor is controlling. It is not the mere loss in value alone that is significant, but the fact that the public welfare does not require the restriction and resulting loss. When it is shown that no reasonable basis of public welfare requires the limitation or restriction and resulting loss, the ordinance fails and the presumption of validity is dissipated. (*Krom v. City of Elmhurst*, 8 Ill.2d 104.) The law does not require that the subject property be totally unsuitable for the purpose classified but it is sufficient that a substantial decrease in value results from a classification bearing no substantial relation to the public welfare."

Here, the evidence indicates that removal of the kitchen facilities will lower the present $55,000 value of the property by about $5000. On the other hand defendant has offered the testimony of its city planner to the general effect that the highest and best use of the subject property is for single-family residence and that the use of the property as a multiple dwelling unit would be detrimental to the character of the area.

We are unable to agree with plaintiffs' argument that the distinction established by the ordinance between the permitted use of the third-floor rooms for roomers and the prohibited use as a separate housekeeping unit with independent cooking facilities is unreasonable. It is undeniable that the maintenance of an additional kitchen facility raises additional health and safety hazards. It is therefore not, as plaintiffs suggest, unrelated to the public welfare. We conclude that the circuit court erred in finding the ordinance unconstitutional as applied to plaintiffs' property.

The judgment declaring plaintiffs' third-floor housekeeping unit to be a legal non-conforming use and declaring defendants' zoning ordinance unconstitutional is reversed. The cause is remanded to the circuit court, with further proceedings, if any, to be not inconsistent with this opinion.

Reversed and remanded.

ENGLISH, P. J., and DRUCKER, J., concur.