THE VILLAGE OF ARLINGTON HEIGHTS, Plaintiff-Appellant, *v.* WALTER KRAUSE, JR. *et al.*, Defendants-Appellees.

(No. 57556;

First District (4th Division)—December 19, 1973.

Jack M. Siegel, of Chicago, for appellant.

Jurco & Collins, of Chicago (William E. Ray, Jr., of counsel), for appellees.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

This is an appeal by the Village of Arlington Heights, the plaintiff, from a final judgment order of the trial court finding the issues in favor of the defendants and against the plaintiff. The court below found that the provisions of the municipal zoning ordinance in question had no application to the subject property and the plaintiff had not established

by competent, material and relevant proof the allegations and charges in its complaint. A countercomplaint filed by the defendants for injunction and declaratory relief which attacked the validity and constitutionality of the ordinance was dismissed by the trial court and there was no appeal on these questions.

The only issue presented for review is whether the property is subject to amortization under the provisions of the zoning ordinance and municipal code of the Village of Arlington Heights.

This case involves the applicability of certain provisions of the comprehensive zoning ordinance of the Village of Arlington Heights adopted on December 21, 1959, pursuant to specific statutory authority contained in the Illinois Municipal Code (Ill. Rev. Stat. 1967, ch. 24, § 11—13—1) which gives municipal authorities the right to enact provisions for the gradual elimination of uses, buildings and structures which are incompatible with the character of the district. The B-5 Central Business District classification was adopted by amendment in 1965. The owner of the property was notified in 1967 that it would be necessary to eliminate the building in question.

The zoning ordinance of the village provides in section 6.8 for the termination of nonconforming uses, buildings and structures. The standard for determining the period for the elimination of nonconforming buildings or structures is assessed valuation of the property. Section 6.8—2 provides as follows:

"Any non-conforming building, structure, or portion thereof, which has a valuation of less than Five Thousand Dollars ($5000) shall be demolished, removed, or remodeled and converted for a use permitted in the zoning district in which it is located within two (2) years from the date the building, structure, or portion thereof became nonconforming with respect to this code, as indicated herein, or five (5) years from the date of issuance of the building permit for same, or from the date construction was completed if no building permit was issued, whichever period shall terminate last."

Under the provisions of section 23—107 of the Municipal Code of Arlington Heights, fire limits are established. That section provides in part as follows:

"(a) The fire limits of the Village shall be all of the area within the corporate limits except the area zoned Residence District R-1 through R-4 inclusive and M-1, M-1A, and M-2. The fire limits, however, shall include all nonconforming uses in said Residence District R-1 through R-4 inclusive and all industrial buildings

which are located contiguous to areas zoned for business purposes. (b) It shall be unlawful to *construct* wood frame buildings as defined in the National Building Code—1955 Edition—in any zoning districts other than R-1 through R-4 inclusive." (Emphasis added.) Pursuant to the provisions of the fire limit ordinance, frame *construction* is not permitted in the B-5 Central Business District.

Sections 3.2—103 and 3.2—104 of the zoning define nonconforming buildings and nonconforming uses as follows:

"3.2—103 Non-Conforming Buildings. A building or structure or portion thereof, lawfully existing at the time of the adoption of this code which was designed, erected or structurally altered for a use that does not conform to the *use regulations* of the district in which it is located." (Emphasis added.)

3.2—104 Non-Conforming Use. A use which lawfully occupied a building or land at the time of adoption of this code and which does not conform with the *use regulations* of the district in which it is located." (Emphasis added.)

Section 12.6—1.1 of the said zoning ordinance includes as one of the permitted uses within the B-5 Central Business District, the following:

"Electrical and household appliance stores, including radio and television sales."

The Illinois Municipal Code (Ill. Rev. Stat. 1967, ch. 24, sec. 11—13—1), which constitutes the enabling legislation pursuant to which the said zoning ordinance was adopted, provides in part:

"In all ordinances passed under the authority of Division 13, due allowance shall be made for existing conditions, the conservation of property values, the direction of building development to the best advantage of the entire municipality and the uses to which the property is devoted at the time of enactment of such an ordinance. The powers conferred by this Division 13 shall not be exercised so as to deprive the owner of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted, but provisions may be made for the gradual elimination of uses, buildings and structures which are incompatible with the character of the districts in which they are made or located, including, without being limited thereto, provisions (a) for the elimination of such uses of unimproved land or lot areas when the existing rights of the persons in possession thereof are terminated or when the uses to which they are devoted are discontinued; (b) for the elimination of uses to which such buildings and structures are devoted, if they are adaptable for permitted

uses; and (c) for the elimination of such buildings and structures when they are destroyed or damaged in major part, or when they have reached the age fixed by the corporate authorities of the municipality as the normal useful life of such buildings or structures."

■■ Zoning ordinances of the type here have been termed "amortization" ordinances for the reason that they permit a property owner to "amortize" the loss of the beneficial use of his property over a period of time. Rathkof, Law of Zoning and Planning, ch. 62—5.

Under the provisions of the B-5 Central Business District zoning classification and, more particularly, section 12.6—2.3 of the zoning ordinance provides:

"When other than residential uses are located in a structure, dwelling units shall not be permitted below the second floor."

Moreover, single-family dwelling units as such are not permitted in the B-5 Central Business District.

The property in question is a two-story frame residence, approximately sixty years old. It is framed with asbestos siding and an asphalt shingle roof. It has a small brick addition on the front which is used as a television repair shop. There is an entrance into the residence both from the store area and the front entrance to the house which is alongside the house. The house is heated with oil heat and hot water. The entire building is in good repair, according to the testimony.

Walter Krause, the defendant, is the owner of the property. He is a semi-retired real estate broker. He purchased the property in 1965 for $44,000, as an investment. In 1968 he leased the property to Mr. Raymond D. Easley on a month-to-month tenancy at $200 per month. The premises are improved with a two-story frame residential-type structure; attached to the front is a one-story brick structure occupied and used as a radio and television repair shop. Mr. Easley has lived and worked at 17 South Evergreen for six years. His gross income is $20,000 a year.

■■ The property has an assessed valuation of $6,960 and the building is assessed at $1,926. It was purchased in 1965 for $44,000, and has a present market value between $50,000 and $52,000, according to expert testimony for both sides. Building regulations may be constitutionally applied even retroactively where the public benefits resulting therefrom are not unreasonably disproportionate to the losses suffered by individual property owners. (*Eggert v. Board of Appeals*, 29 Ill.2d 591; *Kaukas v. City of Chicago*, 27 Ill.2d 197; *City of Chicago v. Miller*, 27 Ill.2d 211; *Abbate Bros., Inc. v. City of Chicago*, 11 Ill.2d 337.) The amortization provision of the zoning ordinance of the Village of Arlington Heights

would allow the owner to amortize the $50,000 property for $6,960. We hold that such an application would constitute an unreasonable disproportionate loss to the defendants herein.

The court below properly decided that in order for the property to be a nonconforming building it must be so under the definition found in Sec. 3.2—103 of the Arlington Heights Zoning Ordinance. The definition applies only to buildings, "designed, erected or structurally altered for a *USE* that does not conform to the *USE* regulations of the district in which it is located." The definition makes no mention of *structures.*

The village cited the case of *Camp v. City of Evanston* (1971), 3 Ill. App.3d 189, 193—95, 278 N.E.2d 131, for a definition of a "non-conforming use" and the case of *Chicago Title & Trust Co. v. City of Chicago* (1970), 130 Ill.App.2d 45, 49, 264 N.E.2d 730, 732, as a further definition of the term. However, both definitions cited by the village on appeal referred to the *USE* regulations of the building and not the type of structure. In *Eggert v. Board of Appeals* (1963), 29 Ill.2d 591, 595, 195 N.E. 2d 164, the issue was whether the *USE* of the property as a seven-apartment dwelling was a lawful one within the definition of nonconforming use in the Chicago Zoning Ordinance article 6, section 6.2:

> "Any non-conforming use, building or structure which *existed lawfully* at the time of the adoption of the comprehensive amendment or any subsequent amendment thereto, may be continued." (Emphasis added.)

In that case the defendant had done the prohibited act of converting a frame building from a three-apartment to a seven-apartment dwelling.

The court below also properly decided that section 23—107 of the Arlington Heights Municipal Code did not apply to defendants' property because the ordinance in question, defining the fire limits of the village, in par. B provides:

> "It shall be unlawful to *construct* wood frame buildings as defined in the National Building Code—1955 edition—in any zoning districts other than R-1 through R-4 inclusive." (Emphasis added.)

That section made no reference to existing frame buildings. In the case of *People ex rel. Skokie Town House Builders v. Village of Morton Grove* (1959), 16 Ill.2d 183, 189, 157 N.E.2d 33, 36, the court said:

> "We are of the opinion that these delegations of power encompass the power to exclude *future* residences from industrial and commercial districts." (Emphasis added.)

In this case the plaintiff did not argue the residential use and occupancy in the court below, but relied on the type of frame structure to constitute the nonconforming use. However, the operation of the radio

and television repair shop was an authorized use in the commercial area which contained a shopping center of small retail stores and other small commercial shops, including a bicycle repair shop. It was not a nonconforming use prohibited by the ordinances, subject to amortization within two years.

■■ We are of the opinion that the trial court was correct in holding that the zoning ordinances did not apply to defendants' property. We, therefore, will not pass upon the other points raised by the parties. The judgment of the court below is affirmed.

Affirmed.

ADESKO and DIERINGER, JJ., concur.