In re COLEMAN HIGHLANDS, Limiting for a Period of Twenty Years the use, Character and Location of Buildings and Other Improvements in a Portion of Coleman Highlands, etc.

CITY OF KANSAS CITY, Missouri, Condemnor–Respondent,

v.

Florence T. THOMAS, Charles J. Gilkey and Berenice V. Gilkey, Condemnees–Appellants,

and

Terry J. Satterlee, et al., I. Edward Marquette, et al., and P. Thomas Laughlin, et al., Condemnees–Respondents.

Nos. WD 40420, WD 40421.

Missouri Court of Appeals, Western District.

Jan. 24, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 1989.

Application for Transfer Sustained April 18, 1989.

Case Retransferred Oct. 5, 1989.

Court of Appeals Opinion Readopted Oct. 6, 1989.

Irving Achtenberg, Susan B. Teson, Kansas City, for Gilkey and Thomas.

Walter J. O'Toole, Jr. and Galen Beaufort, Asst. City Atty., Kansas City, for City of Kansas City.

I. Edward Marquette, Kansas City, pro se.

Terry J. Satterlee, Kansas City, pro se.

P. Thomas Laughlin, Kansas City, pro se.

Before SHANGLER, P.J., and CLARK and NUGENT, JJ.

CLARK, Judge.

This suit is in the nature of a limited condemnation action. It is brought to acquire from selective property owners in the Kansas City subdivision known as Coleman Highlands the rights such owners may have to use their property for other than single family residences for a period of twenty years commencing December 6, 1983. The only issue at trial was entitlement to compensation. The trial court held that appellants were owed no compensation and they have appealed.

An understanding of this case requires first that the unusual situation in Coleman Highlands be described. The area in question is a central Kansas City neighborhood which traces its origin to development begun more than seventy-five years ago before city wide zoning laws were in effect. On this account and for the purpose of preserving the single family residence character of the area, the city has enacted successive ordinances which appropriated with compensation the rights of Coleman Highlands property owners to use their lots for other than single family dwellings. Each such ordinance was for a term of twenty years. On this account, a property owner, or his successor in title, who once qualified for compensation could thereafter be eligible for subsequent compensation at the commencement of the next twenty year period.

Apellants contend the trial court erred when it held they were entitled to no compensation under the 1983 ordinance. If appellants had no right to use their Coleman Highlands lots for multi-family residences on December 6, 1983 when the prior twenty year restriction expired, then they have no claim to compensation because the suit appropriates no property right from them. Conversely, if either appellant did enjoy such a right on the date in question, then compensation is owed because the suit appropriates that right.

First, as a matter principally of historical interest, we recount the details of early conveyances of the lots now owned by appellants and also of the several condemnation with compensation ordinances.

Coleman Highlands was platted as a subdivision in 1907. The first deed conveying the portion of the lot now owned by appellant Thomas was dated in 1908 and included the following restriction: "Said land shall be occupied and used for residence purposes * * * and no buildings to be erected thereon other than detached residence." The lot now owned by appellant Gilkey was first conveyed in 1912. The restriction appearing in that deed stated: "Said lands shall be occupied and used for residence purposes * * * and no buildings to be erected thereon other than detached residences and outbuildings usually appurtenant thereto, and only one residence or dwelling house shall be erected on each of the above described lots."

On May 21, 1923, the city enacted the first of the successive twenty year condemnation ordinances. Under that ordinance, no lot in Coleman Highlands could be used except for one detached residence with usually appurtenant outbuildings. The ordinance contained an expiration date of May 30, 1943. Provision was made for Coleman Highlands lot owners who were damaged by the ordinance use limitations to make claims therefore. The record in this case does not show whether either of appellants' predecessors in title made any claim under the ordinance or whether they were paid or denied compensation.

The next successive condemnation ordinance was adopted May 10, 1943 renewing the land use restrictions in Coleman Highlands for a term expiring May 19, 1963. Lots were expressly restricted to use for single detached residences for one family only. Compensation provisions were made. Again, the record here is silent as to wheth-

er appellants' predecessors in title applied for or were given any payment under this ordinance.

The third special limited zoning ordinance applicable to Coleman Highlands was passed December 6, 1963, some six months after the restrictions under the 1943 ordinance had expired. The 1963 ordinance was patterned after the 1943 ordinance in that it imposed the same limitations restricting use of Coleman Highlands lots to single detached residences occupied by one family. The term of the restriction was for twenty years. The 1963 ordinance also provided for a condemnation action in which property owners could present claims for damages. Appellant Thomas, who owned the north forty feet of Lot 27, Coleman Highlands, at the time, the same property she now owns, made a claim for damages, but payment was denied. Appellants Gilkey did not acquire their Lot 116, Coleman Highlands, until 1973. There is no evidence in this record as to whether their predecessors in title applied for or were paid any damages under the 1963 ordinance.

The last ordinance in the sequence limiting the use of Coleman Highlands property to single family homes was passed March 25, 1983 to be effective December 6, 1983. Again, the prospective term of the restrictions was twenty years. It is pursuant to this ordinance that appellants presented their claims for compensation.

Appellants contend they were eligible for compensation under the 1983 ordinance because the duplex residence on appellant Gilkey's lot and the converted two family dwelling on appellant Thomas's lot were constructed for multi-family occupancy in 1922 and were therefore lawful uses in place when the first condemnation with compensation ordinance was adopted. If that be so, then appellants' rights under the previous ordinances were appropriated only for the terms of those ordinances and were, in effect, revived when the term of the last previous condemnation ordinance expired.

This assertion is valid only if appellants proved that the lots in question were used for multi-family residences at a time when such use was lawful. The trial court in this case found otherwise. In this connection, it is appropriate to note that this finding by the court in this bench-tried case is reviewable under the constraint that the judgment must be affirmed unless it is against the weight of the evidence or is the product of an erroneous declaration or application of the law. *Southern Mo. Sav. and Loan Ass'n. v. Thomas*, 754 S.W.2d 937, 940 (Mo.App.1988). When a case is tried to the court, the trial judge resolves conflicts in the evidence and determines the credibility of the witnesses. *Clark County Sales Co. v. Hester*, 732 S.W.2d 569, 571 (Mo.App.1987). Conflicts in the evidence are for the trial court to resolve and an appellate court should exercise the power to set aside a judgment on the ground it is against the weight of the evidence with caution and with a firm belief that the judgment is wrong. *Trenton Trust Co. v. Western Surety Co.*, 599 S.W.2d 481, 483 (Mo. banc 1980).

Before proceeding to an analysis of appellants' arguments, it is necessary to consider the details and effects of additional Kansas City ordinances which imposed zoning restrictions on Coleman Highlands. These were general zoning ordinances applicable not only to Coleman Highlands, but to the city as a whole.

Effective June 14, 1923, the city of Kansas City adopted its first general zoning law providing permissible land usages. Coleman Highlands was designated Class U–1 and A–1. As is pertinent here, that classification restricted buildings to one family residences except where the lot area was 12,000 square feet or larger. A duplex was permitted only on lots containing at least that minimum footage. The Gilkey lot contains 5750 square feet and the Thomas lot is 4800 square feet.

The Kansas City zoning law was amended in 1951 to adopt a new classification system. The property in Coleman Highlands was redesignated as district R–2a, a category which permitted duplex residences but only if the lot area was at least 10,000 square feet. Appellants' properties

therefore were not qualified for duplex use under either the 1923 or 1951 zoning laws. Finally, in 1975, the zoning classification for Coleman Highlands was changed to district R–1b, a use classification which permits only single family residences.

The foregoing review of the Kansas City zoning law demonstrates that irrespective of the successive condemnation with compensation ordinances, appellants could not have made claim to a lawful use by their predecessors in title of the respective lots for duplex residences unless such use was shown by the evidence to have been in place prior to June 14, 1923. Thereafter, the zoning precluded such use and its continuance could only have been tolerated as a pre-existing non-conforming use which predated the zoning restrictions. The critical question in the case is whether appellants proved, contrary to the finding by the trial court, that the subject properties were lawfully used for multi-family dwellings before June 14, 1923 and were therefore established non-conforming uses which the 1923 and subsequent zoning laws were bound to recognize and accept.

█ The basic law on this subject is well settled. Zoning restrictions must exempt from their immediate operation existing non-conforming uses. *Boyce Industries v. Missouri Highway and Transp. Comm'n.*, 670 S.W.2d 147, 150 (Mo.App.1984). A non-conforming use is a use of land which lawfully existed prior to the enactment of a zoning ordinance and is a vested property right. *Missouri Rock, Inc. v. Winholtz*, 614 S.W.2d 734, 739 (Mo.App.1981). The burden of proving the existence of a lawful non-conforming use is upon the party claiming to hold such a right. *St. Louis County v. Turpin*, 672 S.W.2d 391, 392 (Mo.App.1984).

█ In determining whether an existing use of property may be protected as a lawful non-conforming use, the determinative factor is the actual rather than the contemplated use of the property. In general, a mere intention or plan to use particular property or buildings for a certain use does not establish a pre-existing non-conforming use. Issuance of a building permit is not sufficient to create a vested right for continuance of a non-conforming use. 6 Rohan, *Zoning and Land Use Controls* § 41.02[4] (1987). The fact that a building was erected before the zoning ordinance took effect does not establish an existing use of the building sufficient to create a protected non-conforming exception to the ordinance. 101A C.J.S. *Zoning & Land Planning* § 162 (1979). Thus, in *Camp v. City of Evanston*, 3 Ill.App.3d 189, 278 N.E.2d 131 (1971), it was held that a lawful non-conforming use was not established upon proof that a residence structure was built in 1908, with a separate dwelling unit on the third floor where there was no proof the separate living unit had actually been occupied as such before the effective date of the 1981 Evanston zoning ordinance.

█ In the subject case, appellants presented no proof showing or tending to show that structures on their respective lots were used as multi-family residences at any time before June 14, 1923. Appellants' claims to compensation and the associated claims that their properties were qualified for duplex use as non-conforming lawful uses were rejected by the trial court on grounds, among others, of failure of proof. We are obligated to affirm that decision under the rule that the burden to prove a non-conforming use is on the party asserting the right and the denial of a non-conforming use will be sustained where the evidence of such prior use is insufficient or contradictory. *Schaefer v. Neumann*, 561 S.W.2d 416, 422 (Mo.App. 1977).

Appellants seek to overcome the absence of proof as to the actual use of the residence structures in question by contending it to be sufficient if they prove the structures were built, or in the case of the Thomas property remodeled, before June 14, 1923. As the argument goes, a property owner who, in good faith makes a substantial investment in construction, lawful when undertaken, is entitled to an exemption from zoning restrictions subsequently adopted. There is some support for that proposition, although the doctrine is equitable in origin and appears to be applica-

ble on a case by case basis where the commitment of substantial resources before a zoning change renders it inequitable to deny the non-conforming use status. Thus, in the case of *State ex rel. Great Lakes Pipe Line Co. v. Hendrickson*, 393 S.W.2d 481 (Mo.1965), the Village of Lone Jack imposed residential zoning on a tract of land Great Lakes had acquired for a pumping station. Before the zoning was imposed, Great Lakes had spent or committed more than $64,000.00 for construction in addition to its investment in the land. The court held Great Lakes to have acquired a vested interest in use of the land for a pumping station which the zoning law could not appropriate. Under the facts of that case, enforcement of the Lone Jack zoning law against Great Lakes would have resulted in virtual confiscation of the Great Lakes investment because the company obviously had no economic interest in land restricted for residential use.

The *Great Lakes* case was distinguished in *Independent Stave Co. v. Missouri Highway and Transp. Comm'n.*, 702 S.W.2d 931, 934 (Mo.App.1985), where the court held an advertising sign not entitled to non-conforming use status because there was no proof that substantial work was done or substantial expenses were incurred on an adjacent store building which was contended to qualify the sign location. The court observed the only proof as to the status of the store building before the effective date of the statute was that a construction contract had been signed and work had begun.

In the present case, appellants' proof concerning the status of improvements on the Coleman Highlands lots prior to June 14, 1923 was limited to evidence that in August, 1922, the city had issued two building permits, one to erect a structure at 3334 Karnes and the other for an addition to a structure at 3311 Summit. There was no evidence as to when construction was actually commenced or when it was completed. Appellants say the issuance of the permits creates a presumption that construction followed and that the work was completed before June 14, 1923. They cite no authority for such a presumption to follow upon proof merely that permits were issued, and we are aware of none.

Even were it to be agreed that the issuance of the permits gave rise to an inference that construction probably followed, the trial court was not bound to accept an inference as conclusive proof obligating the court to find lawful non-conforming use exemptions under the 1923 zoning law. Not only were appellants obligated to sustain the burden of proof on the issue, but the court was also bound to consider the rule that non-conforming uses denigrate overall zoning schemes and are therefore not favored in the law. *Burns v. City of Des Peres*, 534 F.2d 103, 111 n. 7 (8th Cir.), cert. denied, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). As the court stated in *Independent Stave*, the burden is on the property owner to prove, in cases of this nature, that substantial construction has occurred or substantial expenses directly relating to the construction were incurred before the effective date of the zoning ordinance. In this case where the only proof on the subject was limited to evidence of the building permits, we cannot say that the trial court erred as a matter of law in finding the evidence insufficient to establish appellants' claims to lawful non-conforming uses.

This case is also distinguishable from *Great Lakes* in that the economic impact upon appellants resulting from enforcement of the zoning law was not significant. The Coleman Highlands lots were, in any event, restricted by the original deeds to residential usage, which usage was preserved under the first zoning law. The trial court found that both of the residences owned by appellants were easily adaptable to single family use and restriction to that use did not destroy the value of the property as was the case in *Great Lakes*.

In summary, the appellants were entitled to no compensation under the present condemnation suit because the multi-family usage of their properties was not lawful under the Kansas City zoning laws after June 14, 1923 and there was insufficient proof entitling appellants to exemptions from

those ordinances as lawful non-conforming uses. This conclusion makes it unnecessary to consider any of the other allegations of error which appellants raise.

The JUDGMENT IS AFFIRMED.

All concur.