FOURTH DIVISION
AUGUST 23, 2007

No. 1-05-0374

| | | |
|---|---|---|
| ROBERT P. TAYLOR and | ) | Appeal from the |
| ANN L. CAROLLO-TAYLOR, | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE ZONING BOARD OF APPEALS OF THE | ) | |
| CITY OF EVANSTON; ARTHUR ALTERSON, | ) | |
| Assistant Director of Zoning of the City of Evanston; | ) | |
| GREGORY E. NORWELL, Chairman, | ) | |
| Zoning Board of Appeals; WALTER B. CLARKSON, | ) | |
| Member; PATRICIA ENGLISH, Member; | ) | |
| BARBARA PUTTA, Member; | ) | |
| SONJA ZUNIGA-REID, Member; | ) | |
| and DONALD SAMPEN, Member, | ) | Honorable |
| | ) | William O. Maki, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE CAMPBELL delivered the opinion of the court:

This is an appeal from an order on administrative review. Plaintiffs, Robert P. Taylor and

Ann L. Carollo-Taylor (plaintiffs or Taylor), are the owners of a building in Evanston. Plaintiffs

filed a request with the City of Evanston (City or Evanston) to classify the existing use of the

building as a multifamily residence containing five welling units. The zoning administrator denied

plaintiffs' application, finding that the property was properly zoned for four dwelling units, and the

Zoning Board of Appeals (ZBA) upheld the determination of the zoning administrator. Plaintiffs

filed an action for administrative review in the circuit court of Cook County against the ZBA and

its directors and members. The circuit court affirmed the determination of the ZBA and plaintiffs now appeal. On appeal, plaintiffs contend that the decision of the ZBA is against the manifest weight of the evidence and contrary to the law, as the ZBA misapplied the zoning ordinance in determining that the property could not be certified for five dwelling units; and (2) plaintiffs' due process rights were violated when a ZBA member participated in the ZBA hearings, notwithstanding the fact that the member later recused herself from formal deliberations and did not vote on plaintiffs' zoning request. For the following reasons, we affirm the judgment of the trial court.

BACKGROUND

The following facts are relevant to this appeal. Plaintiffs Robert P. Taylor and Ann L. Carollo-Taylor are the owners of a property located at 1026 Garnett Place, Evanston (1026 Garnett or Garnett Property). The record reveals that 1026 Garnett was originally constructed as a single-family home in 1921, concurrent with enactment of the first Evanston Zoning Ordinance of 1921. 1026 Garnett remained a single-family dwelling until 1957, when the owner of 1026 Garnett, a certain O. Spenser, submitted an application for a building permit, to wit: "to alter/build to rear of 3-story frame bldg 2 Apts. Added making a total of 5 apts [*sic*]." Evanston issued building permit No. 33191 on this application, as well as a "Certificate of Occupancy and Compliance" No. 7788, to construct and use the three-story building at the Garnett Property "as a 5 Apt Bldg."

City inspection records show that the property was certified for occupancy as five apartments on November 19, 1957. Subsequent inspection reports dated November 12, 1968; January 24, 1984; July 20, 1989; and October 7, 1991, certified the property as containing four dwelling units.

Brian King purchased the Garnett Property in 1986. Members of the King family occupied the entire Garnett Property as a single-family residence, housing student boarders from time to time.

After the adoption of the original zoning ordinance in 1921, Evanston adopted amended zoning ordinances in 1960 and 1978. The current ordinance, adopted by amendment on April 26, 1993, superseded the 1978 zoning ordinance.

Plaintiffs acquired 1026 Garnett in 1996, via Brian King's bankruptcy proceedings.

In 1999, Evanston city inspector Lawrence Smith inspected 1026 Garnett Property and noted a discrepancy between the certificate of occupancy for four units and plaintiffs' use of the property as a five-unit dwelling. At that time, plaintiffs initiated a petition for a zoning recertification of 1026 Garnett as a five-flat dwelling.

On March 13, 2000, Evanston zoning administrator Arthur Alterson denied plaintiffs' petition for zoning recertification pursuant to section 6-6-4-7 of the Evanston Municipal Code (hereinafter Zoning Ordinance), which provides as follows:

> "6-6-4-7: CHANGE IN USE:
>
> A nonconforming use in a noncomplying structure may, upon
> application to the Zoning Administrator pursuant to Section 6-3-9,
> 'Administrative Interpretations," be changed to another noncon-
> forming use of same or similar type but of less intensity provided;
> however, that nothing in this Section 6-6-4-7 shall be deemed to
> authorize any violation of Section 6-6-4. Whenever any noncon-
> forming use is changed back to a more intensive nonconforming

use, such use shall not thereafter be changed back to a more intensive nonconforming use. Whenever any nonconforming use is changed to a conforming use, such use shall not thereafter be changed to a nonconforming use." Evanston Municipal Code §6-6-4-7 (eff. April 26, 1993).

Alterson further indicated that the Zoning Ordinance did not provide for the restoration of an abandoned nonconforming use that is substandard as to lot area in an area zoned an R4 General Residence District where multiple-family dwellings are permitted. The requirements of an R4 district are set forth in section 6-8-5-4 of the Zoning Ordinance as follows:

"6-8-5-4: LOT SIZE:

The minimum lot sizes in the R4 district are:

|  | Minimum Lot Size |
|---|---|
| (A) Single-family dwelling unit | Five thousand (5,000) square feet |
| (B) Two-family and single-family Attached dwelling unit. | Two thousand five hundred (2,500) square feet per dwelling unit, |
| (C) Multiple-family dwelling units and group occupancy units | Two thousand five hundred (2,500) square feet per dwelling unit. |
| (D) Nonresidential use | Ten thousand (10,000) square feet." |

Evanston Municipal Code § 6-8-5-4 (eff. April 26, 1993).

On June 16, 2000, Alterson sent the ZBA the following summary of his findings:

"Zoning lots in the R4 District improved with two-family, single-family attached or multi-family dwellings are required to provide 2,500 square feet per dwelling unit. The subject property has 5,520 square feet, resulting in the residential use of the property being confirming for no more than two dwellings. While City records

4

contain a Certificate of Occupancy and Compliance dated 11/19/57 for the use of 1026 Garnett as a '5 apt bldg,' City inspection reports dated 11/12/68, ½4/84, 7/20/89, and 10/7/91, state that the property contains 4 dwellings."

Alterson determined that 1026 Garnett was legally nonconforming for four units and could not be changed back to a more intensive nonconforming use, *i.e.*, to five dwellings.

Plaintiffs appealed Alterson's decision to the ZBA. Prior to commencing a hearing on plaintiffs' appeal, ZBA member Patricia English recused herself from the hearing on the grounds that she was a neighbor to the Garnett property and that, if necessary, she would make a statement as a resident-objector. The hearing officer denied plaintiffs' motion in *limine* to prohibit any statement of Board member Patricia English and further refused to admit letters submitted by plaintiffs written by individuals who were not present and thus unavailable for cross-examination.

Alterson testified at the hearing that he made the decision denying certification of the Garnett Property as a five-unit dwelling. Alterson stated that since 1968, there had been no recordation that 1026 Garnett consisted of five units. Alterson further testified that when plaintiffs applied for a variance for the erection of a garage on the Garnett Property, plaintiffs' architect stated that there were four units on the property. Alterson identified inspection reports dating November 12, 1968; January 24, 1984; July 20, 1989; and October 7, 1991, and a zoning analysis dated November 21, 1997, all of which identified 1026 Garnett as a four-unit dwelling.

Plaintiff Robert Taylor testified that he purchased 1026 Garnett on December 19, 1996, as part of the chapter 7 bankruptcy of Brian King. Taylor inspected the property at the time of sale, describing it as a building that is separable in two parts; the "old" part of the building in the front

and the "newer" portion of the building in the back, constructed in 1957. Taylor stated that at the time of purchase, the certificate of occupancy provided that 1026 Garnett contained five dwelling units and that the property was assessed and taxed as a "five-flat," but that it was being used as a six-unit dwelling and there were at least six kitchens in the building. Taylor admitted, however, that his contract to purchase 1026 Garnett described the property as a four-unit building and that describing the property as containing four units enabled him to obtain better financing.

Taylor further testified that upon entering the basement for the first time, "it was a mess," but that it consisted of a dwelling unit with a lockable door. The first floor consisted of a foyer, coat room, large parlor, living room, dining room, kitchen and bathrooms. Prior to his purchase of the Garnett Property, the property was occupied by members of the King family and several college students.

Evanston city inspector Lawrence Smith testified that he inspected 1026 Garnett in the summer of 1999 and found numerous code violations, including impermissible basement and attic apartments. Upon reinspection, the City refused to certify the building for occupancy pending a determination by the zoning department regarding the proper number of dwelling units. Smith further testified that Taylor advertised 1026 Garnett as a six-unit rental building.

ZBA Chairman Gregory E. Norwell testified that the Cook County assessor's records for the year 2000 classify the Garnett Property as a four-unit apartment building.

Joe Goodman, a neighbor of the Garnett Property, testified as an objector to a reclassification of the property as a five-unit dwelling. Goodman is the owner of the real estate company Orrington Realty and owns three buildings on Garnett Place. Goodman identified a listing agreement off of the "Multiple Listing Service" (MLS) showing that the Garnett Property was

sold to Taylor as a four-unit building. Goodman stated that "crowding" five to six units into the Garnett Property would create higher density and stress the neighborhood.

Patricia English, the ZBA member who recused herself from the hearing, testified as an objector stating that she resides at 1023 Garnett Place. English stated that she became friendly with the King family in 1979 and that between 1979 and approximately 1994, the property contained three or four units. The King family owned the house and never rented the basement to students. At that time, the first and second floor of the property were occupied by Mrs. Dunbar, her partner, Bruce King, and four children, and the family kept a dog in the basement. Occasionally, two or three people lived in the back of the property.

William English, Patricia English's husband, testified that he had lived on Garnett Place for 40 years and never knew anyone to live in the basement of the Garnett Property building. William English knew the floor plan of the Garnett Property because it was identical to the house in which he was raised.

At the conclusion of the testimony, the ZBA made findings of fact as follows: Chairman Norwell stated on the record that all of the testimony and evidence in support of classifying the Garnett Property as a five-unit dwelling was based upon the conjecture of the applicant. While the record, in fact, revealed that a certificate of occupancy issued in 1957 for five units, since that time all facts consistently showed the Garnett Property to consist of no more than four dwelling units. Norwell noted that Taylor was unusually experienced in the area of zoning, as he was a member of the Evanston Plan Commission as well as a member of the Evanston Real Property Owners Association.

ZBA member Donald Sampen stated that Taylor knew as early as 1999 that the City would take issue with Taylor's attempt to certify the building for five units, noting that Taylor wrote a letter to the zoning office stating: "[T]hroughout recent history of this basement apartment, it was a judgement call as to whether there was more living space than storage space."

ZBA member Barbara Putta agreed that the evidence over time revealed a four-unit building and that the concept of five units was abandoned long before Taylor acquired the property.

The ZBA voted unanimously to affirm the decision of the zoning administrator and issued its formal decision on September 5, 2000. On April 26, 2000, plaintiffs filed an administrative review action in the circuit court of Cook County, challenging the interpretation of Evanston, Zoning Ordinances sections 6-9-5-4 and 6-6-4-7. After oral arguments, the trial court entered a written memorandum opinion and order on September 24, 2004, affirming the decision of the ZBA, finding that the evidence supported the ZBA's determination that 1026 Garnett is a four-unit dwelling.

The trial court denied plaintiffs' motion to reconsider on January 5, 2005. On March 3, 2005, plaintiffs filed a late notice of appeal, without objection by defendant, which was allowed by order of this court.

OPINION

On appeal, Taylor contends that the determination of the ZBA was against the manifest weight of the evidence. Taylor initially argues that both Alterson and the ZBA incorrectly applied section 6-6-4-7 of the Zoning Ordinance pertaining to changes in use in deciding his recertification application.

Judicial review of an administrative decision is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2004)). On appeal, this court reviews the decision of the administrative agency, not the order of the circuit court. <u>AFM Messenger Service, Inc. v. Department of Employment Security</u>, 198 Ill. 2d 380, 390, 763 N.E.2d 272 (2001). This appeal of the ZBA decision is made pursuant to section 6-3-11 of the Evanston Zoning Ordinance, which permits an appeal pursuant to the Illinois Municipal Code. 65 ILCS 5/11-13-13 (West 2004). The findings and conclusions of an administrative agency on questions of fact are deemed *prima facie* true and correct unless found to be against the manifest weight of the evidence. <u>Abrahmson v. Illinois Department of Professional Regulation</u>, 153 Ill. 2d 76, 88, 606 N.E.2d 1111 (1992).

Taylor contends that instead of applying section 6-6-4-7, which provides for changes in use, the ZBA should have applied section 6-6-5-1 of the Zoning Ordinance, which provides as follows:

> "NONCOMPLYING STRUCTURES (AS TO BULK):
>
> 6-6-5-1:  AUTHORITY TO CONTINUE:
>
> Any noncomplying structure that is devoted to a use that is permitted in the zoning district in which it is located may be continued so long as it remains otherwise lawful, subject to the restrictions in Sections 6-6-5-2 through 6-6-5-4."
>
> Evanston Municipal Code §6-6-5-1 (eff. Apr. 26, 1993);

As well as:

> "6-6-5-2:  REPAIR, MAINTENANCE, ALTERATIONS, AND
>
> ENLARGEMENT:

9

Any noncomplying structure may be repaired, maintained, altered

or enlarged; provided, however, that any such repair, maintenance,

alteration or enlargement whether in the vertical or horizontal

dimension, shall comply with all provisions of this Ordinance. (Ord.

129-0-94)." Evanston Municipal Code §6-6-5-2 (eff. Apr. 26

1993).

Taylor argues that because both the past and present use of the Garnett Property as a "multiple family dwelling" is consistent, the use of a fifth residential unit on the property cannot legally be characterized as nonconforming. Taylor describes the pertinent issue as one regarding the definition of "bulk," or the number of square feet required per dwelling unit. Taylor states that "bulk standards" is the only issue in this case because the only issue of noncompliance with the Ordinance is that the Garnett Property does not comply with the minimum number of square feet required per unit. Taylor concludes that his use of the Garnett property as a multiple-family dwelling is a conforming use in a noncomplying structure.

A legal nonconforming use is a use that is not permitted under the current zoning ordinance but is allowed to continue because it predates the ordinance. City of Marengo v. Pollack, 335 Ill. App. 3d 981, 782 N.E.2d 913 (2002); Bainter v. Village of Algonquin, 285 Ill. App. 3d 745, 750-51, 675 N.E.2d 120 (1996); J. Beidler Camp v. City of Evanston, 3 Ill. App. 3d 189, 193, 278 N.E.2d 131, 135 (1971). "The right to a legal nonconforming use is a property right that cannot be taken away unreasonably or for reasons not based on public welfare." Pollack, 335 Ill. App. 3d at 986, citing Hammond v. City of Chicago, 139 Ill. App. 3d 98, 102, 487 N.E.2d 87 (1985); Sanderson v. De Kalb County Zoning Board of Appeals, 24 Ill. App. 3d

107, 110, 320 N.E.2d 54 (1974). However, a use that was not lawful at its inception is not a legal nonconforming use and therefore may be eliminated if it violates the current zoning ordinances. Wright v. County of Du Page, 316 Ill. App. 3d 28, 39, 736 N.E.2d 650 (2000).

Taylor contrasts Welch v. City of Evanston, 87 Ill. App. 3d 1017, 409 N.E.2d 450 (1980), citing its holding that a use must be lawful at its inception before it can be protected from elimination by a present ordinance. There, the building owners failed to show that an eleventh unit was ever legally established notwithstanding the custom that a janitor tended to occupy a basement apartment in Evanston buildings constructed during the 1920s. By contrast, Taylor argues, the Garnett Property was expressly zoned for five-unit occupancy in 1957. Therefore, Taylor concludes, the City must refute the 1957 zoning certification in order to certify the property as a four-unit building.

Taylor's reliance on Welch is misplaced and his contention is unsupported by the record. Welch held that the party requesting a nonconforming use bears the burden of establishing that the use was legally established at the time the zoning ordinance was adopted or amended. Welch, 87 Ill. App. 3d at 1023 . The record reveals that the Garnett Property was completed the same year as the original Evanston Zoning Ordinance, 1921. At the time of the inception of the original Zoning Ordinance, the Garnett Property was certified as a single-family home. Although the property changed in character from time to time after that, including in 1957 when the property was zoned to accommodate five units, in 1986, the property reconverted to use as a single-family residence, thus demonstrating an intent to abandon the use of a fifth unit. See, *e.g.*, City of Des Plaines v. La Salle National Bank of Chicago, 44 Ill. App. 3d 815, 820, 358 N.E.2d 1198 (1976).

11

At the time Taylor acquired the property in 1996, the Garnett property was certified as a four-unit dwelling, and had been so certified on multiple occasions.

The Zoning Ordinance applicable to this issue case is the 1993 amended ordinance. The Garnett Property is located in an R-4 General Residence District, which permits multiple-family dwellings. The lot on which the Garnett Property is located contains 5,520 square feet of space. The current ordinance requires lots devoted to multifamily uses in the R-4 district to provide 2,500 square feet of land area for each dwelling. Thus, 1026 Garnett allows for a maximum of two conforming dwelling units under the ordinance.

The record reveals that the Garnett Property did not contain a fifth unit at the time of adoption of the 1993 ordinance, nor was the property certified for five-unit occupancy at that time. As set forth above, section 6-6-4-7 of the ordinance prohibits reconversion to a more intensive use once that use has been abandoned. Therefore, the fifth unit proposed by Taylor does not constitute a legal nonconforming use of the Garnett Property. The City properly denied plaintiffs' petition for zoning recertification pursuant to section 6-6-4-7 of the Zoning Ordinance.

Taylor further contends that his due process rights were violated when the Board denied his motion in *limine* to preclude ZBA member Patricia English from testifying at the hearing as an objector to Taylor's application for recertification. Taylor argues that the City ignored article 1, section 7, of the Rules of Procedure of the Zoning Board of Appeals, which provide in pertinent part: "No member of the [Zoning] Board who has a financial interest in the property or the affairs of the applicant or appellant or believes he has some other direct conflict of interest shall participate in any way in the case involving such property or person." Taylor concedes that the Rules of Procedure are not incorporated into the Zoning Ordinance.

Taylor's argument is unsupported by any citation to authority. The record shows that English recused herself from sitting as a ZBA member because of the possibility that she might testify as a neighbor. There is nothing in the record that indicates English had any financial interest in the outcome of Taylor's hearing; therefore, the procedural rule cited by Taylor is inapposite.

Finally, Taylor contends that the public hearing he was afforded did not adequately protect his due process rights. Taylor argues specific rules and procedures were not followed by the ZBA in that the ZBA chair admitted: "I guess appeals [of administrator rulings] are somewhat unusual in coming before us. The procedure is not as well-formalized or well-known by me in general anyway." Taylor states that he was denied a fair hearing by the absence of specific procedural guidelines such as those mandated in a zoning revocation hearing. Taylor cites no authority for his contention.

The record shows that Taylor was afforded a hearing on his application for recertification of the Garnett Property and that the ZBA heard the testimony of multiple witnesses prior to issuing its opinion. The process for review of the application for recertification of a property is distinct from an enforcement action as the latter is a quasi-criminal proceeding and carries with it substantial notice and hearing provisions. 65 ILCS 5/11-13-15 (West 2006) As such, Taylor has failed to show that his due process rights were obstructed in any manner.

For the reasons set forth herein, we affirm the judgment of trial court, affirming the decision of the ZBA.

Affirmed.

QUINN, P.J., and MURPHY, J., concur.